David F. Lee, Jr., J.
In this declaratory judgment action, in which the question for determination is whether there was insurance coverage, both collision and liability, at the time plaintiff’s automobile was “in a collision or upset with another object ”, the defendant Great Eastern Insurance Company (Great Eastern) moves, pursuant to CPLR 3212, for summary judgment. The plaintiff moves, pursuant to CPLR 3212, for summary judgment against the defendant Hanover Insurance Company (Hanover).
The facts, as set forth in a memorandum submitted by plaintiff’s counsel, and which “ [t]he defendants are in general agreement with ’ ’ are:
“ Plaintiff, on or about May 27, 1970 purchased a 1969 Ford Mustang for the approximate purchase price of $2700. The plaintiff obtained financing for the vehicle through an installment loan contract obtained at Endicott Trust Company *90 * * *. At the time the vehicle was purchased, the plaintiff also purchased from Howard Palmer, insurance agent and named defendant herein, a comprehensive collision policy issued by Great Eastern Insurance Company and property damage policy from Hanover Insurance Company, which policies covered said automobile from May 27,1970 to May 27,1971. Plaintiff financed the payment of the premiums of said insurance policies through Policy Advancing Corporation * * *.
11 Each insurance policy contains a loss payable clause to the bank, Endicott Trust Company. However, the two loss payable clauses are distinguishable upon their facts. The ‘ loss payable ’ clause in the Hanover policy is detailed and provides, among other things, that Hanover Insurance Company shall notify the lienholder (Endicott Trust Company) in the event the company desires to cancel the policy. The ‘ loss payable ’ clause contained in the Great Eastern Insurance Policy stipulates only that ‘ any loss hereunder is payable as interest may appear to the insured and Endicott Trust Company, Endicott, New York.’ No other provision regarding the loss payee were set forth.
“ Shortly after the vehicle and insurance policies were financed, confusion arose between plaintiff and defendant insurance companies over premium payments and credit allowances. The details of such misunderstandings are not here in question. In any event, Policy Advancing Corporation, due to plaintiff’s failure to pay premiums and pursuant to its grant of power of attorney between it and the plaintiff, mailed notices of cancellation to Great Eastern Insurance Company, Hanover Insurance Company and the plaintiff, Duane Dyer.
“ Thereafter, on or about November 14, 1970, the plaintiff’s automobile was involved in an accident in which the vehicle was declared a total loss. Both Great Eastern and Hanover Insurance Companies disclaimed. Thus, the plaintiff brought this action to enforce the insurance policies which defendant claims were po longer effectual.”
It is not disputed that Great Eastern issued to plaintiff a collision insurance policy and that Hanover issued to him a liability insurance policy on the automobile. The plaintiff himself breached his contract to pay installments to Policy Advancing Corporation (PAC) which had financed on his behalf the premiums to Great Eastern and Hanover, and it was this conceded breach of his premium financing contract which led PAC, under the power of attorney included in the premium financing agreement, to mail notices of cancellation to plaintiff and the defendant insurance companies. That PAC was authorized, under the *91 circumstances, to cancel the policies is not disputed. The issue here, as noted by plaintiff’s counsel, “ concerns the question of notice to a third party mortgagee in an insurance contract.”
The notices of cancellation were mailed by PAC on October 9, 1970. This was the 10 days’ notice with 3 days added for mailing required by section 576 of the Banking Law (subd. 1, par. [b]), governing cancellation by a “premium finance agency.” The accident in which plaintiff’s automobile was involved occurred November 14, 1970, well beyond the time required after mailing of the notices of cancellation to plaintiff and defendant companies. It is alleged and urged that plaintiff should have liability coverage of third-party claims, as well as collision coverage. The crux of the matter is whether the chattel mortgagee, Endicott Trust Company, was also entitled to notices of cancellation to effectuate the cancellations. As noted by plaintiff’s counsel: “ Plaintiff bases his position on the fact that no notice of cancellation was delivered to the loss payee, Endicott Trust Company.”
Notice of cancellation of policies of insurance on automobiles is not required by statute to be delivered to a mortgagee, a loss payee. (Banking Law, § 576; Vehicle and Traffic Law, § 313; Insurance Law, § 167-a.)
Plaintiff’s counsel urge, among other things, in their memorandum : ‘ ‘ The law is well founded that in the case of fire insurance on real property, in which a mortgagor is bound by covenant to insure the mortgaged premises, the mortgagee has what is considered an ‘ equitable lien ’ upon the money due on a policy obtained by the mortgagor. The extent of the mortgagee’s interest is the value of the property destroyed. This interest attaches even though the policy contains no mortgagee clause and is payable to the mortgagor. * * # The only real distinctions between the Schleimer case [65 Mise 2d 520] and the case at bar is that the plaintiff herein is not the mortgagee, but the insured himself. Nonetheless, if the insurance company failed to comply with the requirements for cancellations, it should not be allowed to benefit therefrom and the insured forced to suffer as a result of the insurer’s noneompliance. If compliance with notice requirements is insufficient, then the insurance policy should have been in full force and effect on November 14, 1970, the date of the accident.
“ It is arguable by analogy that the plaintiff is in fact a direct third party beneficiary; between the mortgagee (Endicott Trust Company) and the defendant (Great Eastern Insurance Company). Employing the reasoning that there was a direct con *92 tract running between the insurer and the mortgagee (Greenberg v. 1625 Putnam Avenue Corporation, 241 App. Div. 623), the plaintiff, Dyer, then can enforce that contract. It is a well settled point of law that a person for whose benefit a contract is made, although not a party to the contract, may enforce its terms (S & B Rubber & Chemical Corp. v. Stein, 7 N. Y. S. 2d 553, affd. 255 App. Div. 1012).
‘1 It is true, too that the plaintiff was financing his premiums through Policy Advancing Corporation. (PAC) PAC notified, through its grant of authority of power of attorney, both the plaintiff and Great Eastern Insurance Company of cancellation. However, such an intervening third party should not have any effect on duties owed by the defendant insurance company. Merely the fact that Dyer was forced to finance his premium payments through PAC should not alter the insurance company’s requirement to notify the interested parties in order to effectively cancel ;the policy. ’ ’
On the other hand, counsel representing the defendants, on behalf of the defendant Great Eastern, urge that the defendant Great Eastern was not required to notify the loss payee under the circumstances, and in a memorandum submitted in support of the motion on behalf of Great Eastern note: “ The plaintiff does not cite any statutory authority which would require Great [Eastern to notify a loss payee, when there is not a provision in the policy which would require such notice. When a premium financing agency finances automobile insurance premiums, then cancellation of that automobile insurance policy is governed by section 576 of the Banking Law. Theodore v. Hartford Accident Indemnity Company (60 Misc 2d 991) * * *. Section 576 of the Banking Law does not require notification by Great Eastern to the loss payee since it only requires compliance with contractual restrictions, and there was no requirement ijn the policy to give notice to the loss payee. Further, there is no requirement in either section 313 of the Vehicle and Traffic, Law or section 167-a of the Insurance Law requiring notice to a loss payee. * * *
‘ ‘ The plaintiff has cited no statutory authority and no cases which hold that an automobile insurer is obligated to send notice of cancellation to a loss payee when there is no loss payable clause 'in the policy, and when it is not the insurer cancelling the policy. Section 167-a of the Insurance Law states in effect that the insurer can cancel an insurance policy only for nonpayment of premium and loss of driving privilege. In our case, *93 the Premium Advancing Corporation cancelled the policy pursuant to a power of attorney granted to it by the plaintiff.”
The question for determination on a motion for summary judgment is whether, upon all the papers and proof submitted on that motion, the court should, as a matter of law, direst judgment in favor of either party. The papers submitted reveal no triable issue of fact on either of the motions under consideration. It is, also, noted that neither of these motions calls for or requires the application of the rules for the construction of contracts of insurance, the doctrine of strict construction against the insurer. In any event, the rules of liberal construction of policies do not permit a court, in construing a policy, under the guise of liberal construction, to make a new contract for the parties containing provisions upon which they had not agreed. The court in Shirai v. Blum (239 N. Y. 172, 179) noted: “ Contractual obligations are fixed solely by the parties, and the language of a business contract must be construed in the light of what a business man would reasonably expect to give or receive, to perform or suffer, under its terms.”
The plaintiff urges, as noted, that, 1 ‘ by analogy ’ ’, the plaintiff is a ‘‘ direct third party beneficiary ’ ’ of the contract of insurance, and that the mortgagee, the loss payee, there being “ a direct contract running between the insurer and the mortgagee ”, was entitled to notice of cancellation of the policies to effectuate the cancellation, and that plaintiff, as a third party, can enforce the contract. The leading case, of course, as to contracts for the benefit of a third person, is Lawrence v. Fox (20 N. Y. 268). A third person can enforce a contract entered into between others for his benefit, subject to certain conditions and qualifications. The reason for the doctrine is that it is just and practical to permit the person for whose benefit the contract is made to enforce it against one whose duty it is to pay. (Seaver v. Ransom, 224 N. Y. 233, 237.)
An insured and an insurer under a policy of insurance, as parties to a contract entered into for the benefit of a third person may cancel or rescind the policy of insurance, the contract, “ as they see fit, without the assent of the third person at any time before the contract is accepted, adopted or acted upon by him and such rescission deprives the third person of any rights under or because of such contract (Moore v. Ryder, 65 N. Y. 438). However, after the third person accepts, adopts or acts upon the contract entered into for his benefit, the parties thereto cannot rescind the same without his consent, so as to deprive him of its benefits (Comley v. Dazian, 114 N. Y. 161).” (Stein v. *94 Severino, 41 Misc 2d 209, 211; see, also, 10 N. Y. Jur., Contracts § 250).
That Endicott Trust Company, the chattel mortgagee, was named as the loss payee on the collision policy issued to plaintiff by Great Eastern is not disputed. Nor is it disputed that: “ [I]t is bank policy to require, before approving the loan for the purchase of said automobile, that the bank be named on the insurance policy as loss payee. It is then bank policy to deny the application for the loan for the purchase of an automobile unless the bank’s interest is properly protected by a loss payable clause on the insurance policy. ’ ’ The Endicott Trust Company, “ the third person ”, acted upon the contract, the policy of insurance, entered into for its benefit, and approved the loan to plaintiff, and the policy may not be rescinded or canceled without notice to the bank. No notice of cancellation was given to “ the third person ”, the bank. That the loss payee, the bank, is not the party plaintiff nor a party to the action should not, under the circumstances, preclude a resolution of the disputes litigated in the action.
The same principle is, of course, applicable with regard to the policy of insurance issued to plaintiff by Hanover; however, it can hardly be urged nor can it be said that “ the third person ” acted upon the liability policy of insurance. The cancellation of the liability insurance policy issued by Hanover to plaintiff, under the circumstances here, required no notice to Endicott Trust Company.
The plaintiff should be awarded judgment declaring that on November 14, 1970, plaintiff had collision insurance coverage in force on his 1969 Ford Mustang automobile under the policy of insurance issued to him by the defendant Great Eastern Insurance Company; that the disclaimer by the defendant Great Eastern under its policy of insurance issued to plaintiff was improper and of no force or effect. Summary judgment should be granted in favor of plaintiff and against the defendant Great Eastern accordingly.
The defendant Hanover should be awarded judgment declaring that on November 14, 1970, plaintiff had no liability insurance in force with it and that it is not obligated to defend him in any action that may be brought against him arising out of the accident which occurred on November 14,1970, nor to pay any judgment that may be recovered in any such action. Summary judgment should be granted in favor of the defendant Hanover and against ¡the plaintiff accordingly.
No motion costs or taxable costs are awarded.