**WORLDWIDE SUGAR CO., Plaintiff,**

v.

**ROYAL BANK OF CANADA, Defendant.**

No. 83 Civ. 1208 (ADS)

United States District Court, S.D. New York.

July 6, 1984.

Richards, O'Neil & Allegaert, New York City (Thomas Sheridan, New York City, of counsel), for plaintiff.

Sage, Gray, Todd & Sims, New York City (William Allingham, John Hannaway, New York City, of counsel), for defendant.

## MEMORANDUM OPINION AND ORDER

SOFAER, District Judge.

This case involves an alleged breach of contract. The parties filed cross-motions for summary judgment, and an oral opinion granting judgment for the defendant was delivered on March 7, 1984. This memorandum spells out in greater detail the basis for that decision.

The plaintiff, Worldwide Sugar Corp. ("Worldwide"), is a sugar trading company located in New York. On December 18, 1981, Worldwide made a contract with Grupo Vicini ("Vicini") to purchase 10,000 long tons of sugar and pick up that sugar from Vicini in the Dominican Republic. Plaintiff's 3(g) Statement (No. 1); Affidavit of Jose Mari Chan, Oct. 7, 1983, at 3; Affidavit of William Allingham, Sept. 14, 1983, at 1. The December 18 contract neither included any provision for the furnishing by Worldwide of a letter of credit nor required that Vicini furnish a letter guaranteeing performance.

As of March 31, 1982, Worldwide had not yet presented a vessel to pick up the sugar.

Plaintiff's 3(g) Statement (No. 5). On March 30, 1982, and again on April 1, 1982, Vicini requested that Worldwide pay ninety-five percent of the sugar's value. *Id.* (No. 6). On April 2, 1982, apparently in response to this request, Worldwide applied to the Morgan Guaranty Trust Company of New York ("Morgan") for a letter of credit naming Vicini as the beneficiary and the Royal Bank of Canada ("Royal") as the seller's advising bank. On April 6, 1982, Morgan issued a letter of credit in favor of Vicini to expire on July 31, 1982. Royal received notice of the letter of credit, which included special instructions stating that payment would be made upon receipt by Morgan of the following:

1. Sellers commercial invoice for 10,000 LT.

2. Copy of insurance policy covering mentioned quantity of sugar indicating in case of sugar damage beneficiary to reimburse buyer the equivalent amount negotiated.

3. Letter of Guarantee from beneficiary stating they will load free of charge Dominican sugar as mentioned in invoice on board vessel(s) that buyer present and to present usual shippine [sic] documents necessary.

4. Warehouse receipts covering 10,000 LT min/max of Dominican sugar.

5. Certificate of Lloyds that there is actually sugar to cover above-mentioned Warehouse receipts.

6. All documents to be issued in favor of Morgan Guaranty Trust Co., New York for account of Worldwide Sugar Corp.

Chan Affidavit, Exh. D.

On April 12, 1982, in order to comply with the third instruction, Vicini requested Royal to issue a guarantee in favor of Morgan. Deposition of Michael Kelly, May 24, 1983, at 31; Chan Affidavit, Exh. E. Of the 10,000 long tons of sugar which Vicini had contracted to sell to Worldwide, 6,000 were actually delivered in mid-April.

Royal requested clarification of certain language in the letter of credit on April 13, 1982. Two days later, it withdrew this request and telexed Morgan that the "documents required have been presented ... in compliance with the terms and conditions of your credit." Chan Affidavit, Exh. G. Royal then requested payment under the letter of credit, enclosing the documents. *See* Reply Affidavit of William Allingham, Oct. 14, 1983, Exh. W. On the same day, but in a separate letter, Royal confirmed to Morgan that the letter of guarantee had been issued. The full text of the letter of guarantee reads as follows:

The Manager
Morgan Guaranty & Trust Co.
23 Wall Street
New York, N.Y. 10015
U.S.A.
Dear Sirs:
*Re: Your L/C 803254—our OBLC 36*
We hereby guarantee that beneficiaries will load free of charge Dominican Sugar as required in your above mentioned Letter of Credit.
This guarantee is issued in order to comply with agreement between buyers and sellers and will expires [sic] on July 31, 1982.

Chan Affidavit, Exh. H. The reference in the guarantee to an agreement between Worldwide and Vicini, as explained below, is not a reference to the December 18 contract, but to a later agreement between Vicini and Worldwide concerning payment by letter of credit.

On April 20, 1982, Morgan refused payment of the letter of credit, since the documents had to be presented to Morgan in New York. Chan Affidavit, Exh. J. Royal responded on April 22 by telex stating that Worldwide had "authorized payment" to the beneficiary Vicini. *Id.* Exh. K. On the same day, Vicini telexed Worldwide, asking Worldwide to instruct Morgan to pay Royal the full amount of the letter of credit. *Id.* Exh. L.

Worldwide chose, however, to abandon the letter-of-credit mechanism. On April 23, 1982, it paid two checks totalling $2,915,360 directly to Royal, representing the full amount that would have been payable under the letter of credit for the 10,000 long tons. *Id.* Exh. M. On the same

day, Worldwide requested Morgan to cancel the letter-of-credit arrangement. *Id.* Exh. N. On April 26, 1982, Morgan telexed Royal requesting that it obtain Vicini's agreement to cancel the letter of credit. *Id.* Exh. O. On April 27, four days after Worldwide had paid for the sugar, Morgan acknowledged the "receipt of documents" necessary for payment under the letter of credit. Since payment had been made outside the letter of credit, Morgan asked Royal's letter-of-credit collection department to "release [the] documents directly to the buyers free of payment." *Id.* Exh. P. Royal granted this request on May 4, 1982. *Id.* Exh. Q. Vicini agreed to the cancellation of the letter of credit, Morgan was so advised, and the letter of credit was cancelled. Plaintiff's 3(g) Statement (No. 21).

On May 5, 1982, President Reagan issued Proclamation No. 4941, 47 Fed.Reg. 19661, imposing a quota on the importation of sugar into the United States. The Proclamation placed a limit upon the amount of foreign sugar that could be brought into the country or be withdrawn from warehouses for consumption between May 11 and June 30, 1982. At the end of that period, the Secretary of Agriculture was to establish separate quotas for each quarter. Chan Affidavit, Exh. R. The New York Coffee, Sugar and Cocoa Exchange ("Exchange") had adopted a set of rules dealing with contracts for the sale of sugar. *Id.* Exh. S. The rules established standard terms for sugar contracts, and Vicini and Worldwide had agreed in their December 18, 1981, contract that Rule 11 of the Exchange rules would govern their contract, except as altered by their contract's express terms. *Id.* Exh. A. As a result of the President's proclamation and a subsequent interpretation of the Exchange rules by the President of the Exchange, producers who sold sugar under Rule 11 contracts could refuse to deliver sugar if the destination was the United States, and could demand premiums from buyers who wished to bring sugar to the United States. *Id.* Exhs. Y & Z.

These developments occurred after Vicini was paid and after Worldwide had picked up 6,000 tons of the sugar. A second vessel, the *Polyxeni,* had been presented at the Dominican port on or about April 19, 1982, for the purpose of picking up the remaining 4,000 tons. On inspection, however, the *Polyxeni* was found unfit to receive the sugar. Plaintiff's 3(g) Statement (Nos. 14–16). The *Polyxeni* was then removed from the line of vessels awaiting loading; instead of trying to clean the ship, Worldwide discharged it from its charter on April 21, 1982, and advised Vicini by telex. Chan Affidavit, Exh. I. When Worldwide finally presented a vessel, the *Brava Rio,* for loading on July 29, 1982, Vicini refused to load. Worldwide contends that the language of its contract with Vicini required Vicini to deliver sugar to the United States without the payment of a premium. *Id.* Exh. EE. Vicini has refused to deliver the sugar, however, unless the sugar is shipped to somewhere other than the United States, or a premium is paid for delivery to the United States. In this suit, Worldwide claims that the contract has been breached because it had the express right to take the sugar to the United States, and seeks to enforce the guarantee between Royal and Morgan that the sugar would be delivered to Worldwide, contending that it is a third party beneficiary of the guarantee.

## I.

Summary judgment is appropriate when no material fact is genuinely in dispute, and when the controversy can be settled as a matter of law. In determining whether summary judgment is appropriate, a court must "resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought, with the burden on the moving party to demonstrate the absence of any material fact genuinely in dispute." *FLLI Moretti Cereali S.p.A. v. Continental Grain Co.,* 563 F.2d 563, 565 (2d Cir.1977) (quoting *Heyman v. Commerce and Industry Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975)).

Worldwide bases its cause of action against Royal on two theories. First, it argues that Royal issued its written guarantee of Vicini's performance to Morgan as Worldwide's representative and in accordance with the December 15, 1981 contract between Worldwide and Vicini. Second, it claims that even if the guarantee was part of a separate contract between Morgan and Royal, it is entitled to sue as a third-party beneficiary of that contract.

■ Worldwide's first argument is untenable. The letter of credit was a separate agreement between Morgan and Royal. The documents issued by Morgan approving the letter of credit, the letter from Vicini to Royal requesting issuance of the guarantee, and the letter of guarantee itself all mention that the guarantee was issued to satisfy the requirement referred to in the special instructions attached to the letter of credit. Indeed, in its July 27, 1982 telex to Royal, asking Royal to see either that the sugar was loaded or that a refund of Worldwide's advance payment was made, Worldwide referred to Royal's letter as "your guarantee *to Morgan Guaranty Trust New York* dated April 15, 1982." Chan Affidavit, Exh. AA (emphasis added).

Worldwide relies on arguably ambiguous language in the letter of guarantee itself— the reference to the "agreement between buyers and sellers"—and states conclusorily that this language "reflects Royal's understanding that Worldwide had requested the guarantee and Vicini had agreed with Worldwide to provide one." Plaintiff's Memorandum of Law In Opposition to Defendant's Motion for Summary Judgment at 7. Worldwide attempts to corroborate its position by relying upon the deposition testimony of Robert Siebel, a vice president of Morgan. *See id.* The full text of the Siebel deposition makes clear, however, that the guarantee, although "separate" from the letter of credit, was definitely viewed as part of the arrangements surrounding the issuance of the letter. Deposition of Robert L. Siebel, Aug. 29, 1983, at 39–40. Morgan insisted on the letter of guarantee because of its hesitancy to finance a letter-of-credit transaction using warehouse receipts as the only collateral in a situation it perceived as "lacking warehouse discipline." *Id.* at 40.

Prior to the completion of discovery, some ambiguity existed concerning the reference to an "agreement" in the letter of guarantee. It is now clear, however, that the original agreement contained no requirement for payment by letter of credit or for a guarantee, and that to the extent that Vicini and Worldwide made an additional agreement after their December 18, 1981 contract for the purchase of sugar, that later contract concerned the way in which payment was to be made under the December 18 contract—i.e., by letter of credit. Allingham Reply Affidavit at 7. Michael Kelly, the assistant manager of Royal's Santo Domingo branch, who signed the letter of guarantee, testified without contradiction that he had been informed by one of the officers of Vicini that Worldwide and Vicini had reached a second agreement supplementing their original contract, "as a result of which Morgan Guaranty Trust Company issued a letter of credit in their favor." Kelly Deposition at 41; *see id.* at 39. Thus, if Worldwide has a cause of action against Royal as the guarantor of Vicini's performance, that right must be based upon its position as a third-party beneficiary of the Morgan-Royal contract.

## II.

■ Letters of credit are contracts, and as such are governed by general principles of contract law. *J. Zeevi & Sons, Ltd. v. Grindlays Bank (Uganda) Ltd.,* 37 N.Y.2d 220, 225, 333 N.E.2d 168, 172, 371 N.Y.S.2d 892, 897, *cert. denied,* 423 U.S. 866, 96 S.Ct. 126, 46 L.Ed.2d 95 (1975); *accord Venizelos, S.A. v. Chase Manhattan Bank,* 425 F.2d 461, 465–466 (2d Cir. 1970). The longstanding New York rule is that a third party may recover "only by establishing (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to

indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." *Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 336, 451 N.E.2d 459, 469, 464 N.Y.S.2d 712, 722 (1983). In this case, Worldwide's claim satisfies none of these criteria.

## A. *Enforceability of the Morgan-Royal Contract*

■ Morgan and Royal rescinded the underlying contract of which Royal's letter of guarantee was a part. The contract involving a letter of credit is "entirely separate and distinct from the underlying sales contract." H. Harfield, Bank Credits and Acceptances 72 (5th ed. 1974); *see Venizelos, S.A.,* 425 F.2d at 465. Therefore, the continued existence of the Worldwide-Vicini contract is irrelevant to Worldwide's claim of standing under the letter-of-credit arrangement between Morgan and Royal. The rescission destroyed any rights Worldwide might have had:

> Parties to a contract entered into for the benefit of a third person may rescind the contract as they see fit without the assent of the third person at any time before the contract is accepted, adopted or acted upon by him and such rescission deprives the third person of any rights under or because of such contract.

*Weissman v. Blue Cross of Western New York,* 116 Misc.2d 1063, 1066, 457 N.Y.S.2d 392, 395 (City Ct. Buffalo 1982) (quoting *Dyer v. Great Eastern Ins. Co.,* 71 Misc.2d 89, 93, 335 N.Y.S.2d 771, 776 (Sup.Ct. 1972)); *see Moore v. Ryder,* 65 N.Y. 438, 442–43 (1875); *accord McCulloch v. Canadian Pacific Ry. Co.,* 53 F.Supp. 534, 544–45 (D.Minn.1943) (interpreting New York rule). Moreover, a guarantor "should not be bound beyond the express terms of his guaranty [and that] ... guaranty will be limited to the transaction for which it was given, unless its terms clearly import a continuing liability." *Central Trust Co. v. J. Gottermeier Development Co.,* 65 Misc.2d 676, 678, 319 N.Y.S.2d 25, 27 (Sup. Ct.1971).

■ In this case, Worldwide manifested no acceptance of or reliance on the Royal guarantee. Indeed, Worldwide circumvented the entire letter-of-credit arrangment by paying Vicini directly, rather than leaving Morgan to pay for the sugar. As the chronology of communications presented above demonstrates, Worldwide not only paid Vicini outside the letter-of-credit arrangment, but also paid Vicini before it or Morgan had received the letter of guarantee written by Royal pursuant to the letter of credit. On April 23, Worldwide directed Morgan to cancel the Morgan-Royal letter of credit, presumably to avoid Royal's drawing on the letter after Vicini had already been paid. The guarantee was a condition of that letter of credit, so Worldwide cannot now claim the benefits which it would have accrued had it paid Vicini by means of an instrument whose cancellation it expressly instructed. Once the underlying claim to which the guarantee pertained was extinguished—and that underlying claim here relates to the Morgan letter of credit, *not* to Vicini's obligation to perform its contract with Worldwide—the guarantee too was extinguished and no suit can be brought upon it. *See John Berger & Son Co. v. Duys,* 174 Misc. 976, 977–78, 22 N.Y.S.2d 470, 471 (Sup.Ct.1940), *aff'd,* 261 A.D. 961, 26 N.Y.S.2d 503 (1941); *cf. Dumbadze v. Agency of Canadian Car & Foundry Co.,* 38 N.Y.S.2d 991, 1004 (Sup. Ct.Spec.Term 1942) (plaintiff who settled claim against principal could not sue surety), *aff'd,* 267 A.D. 782, 45 N.Y.S.2d 955 (1943).

■ Worldwide's contention that Royal's guarantee somehow survived cancellation of the letter of credit is similarly unpersuasive. Worldwide bases this claim on Morgan's April 27, 1982 telex to Royal, requesting Royal to permit it to release "all documents" to Worldwide free of payment. Worldwide contends that Royal's May 4 assent to this request effectively transformed the letter of guarantee which Royal gave to Morgan into a guarantee from Royal to Worldwide. The letter of guarantee, however, does not fall within the category of "documents" to which the April 27

telex referred. Those documents are properly understood as the incidents of title to the sugar, to which Royal referred in its April 15 telex to Morgan. These documents served a dual purpose, both communicating information about the sugar involved in the Worldwide-Vicini transaction and serving to trigger Morgan's obligation to pay under the Morgan-Royal agreement. Thus, their usefulness survived the death of the Morgan-Royal letter of credit.

The guarantee itself, however, cannot be viewed as one of these "dual purpose" documents. First, although Royal wrote the letter of guarantee on the same day that it complied with the other conditions of the letter of credit, it sent the guarantee to Morgan separately. By its very manner of presentation, then, the guarantee was treated as special. Second, Worldwide provided no consideration for the Royal guarantee. While no consideration on the part of Royal or Vicini would have been necessary to induce Morgan to establish or modify its letter of credit, see N.Y.U.C.C. § 5–105 (McKinney 1964), the converse is not true. For Royal's guarantee to be valid and enforceable, Royal must have received some consideration, either from Worldwide or from Morgan. *See Central Trust Co.,* 65 Misc.2d at 678, 319 N.Y.S.2d at 27. But Royal received no consideration for making its guarantee. Worldwide's payment, standing alone, did not furnish any additional consideration, since that payment was due under the December 18, 1981 Worldwide-Vicini contract. Worldwide's claim that its decision to make that payment in advance of lifting all the sugar furnished such consideration is also unavailing. Worldwide made the payment before it ever saw the terms of Royal's guarantee. Worldwide's claim that it relied on Royal and Vicini's "representations" that a guarantee was forthcoming suggests more that the guarantee induced *Worldwide* to accelerate payment than that Worldwide had done anything beyond arranging for the letter of credit to induce *Vicini* to arrange for a guarantee. In rescinding the letter of credit, Worldwide rescinded the only consideration involved in the letter of guarantee. Worldwide's alleged reliance on the letter of guarantee—even had it occurred—would have been unreasonable, because it should have realized that the guarantee was void once the letter-of-credit arrangement between Morgan and Royal had been extinguished.

### B. *Intention To Benefit Worldwide*

■ To recover as a third-party beneficiary to the Morgan-Royal contract, Worldwide must be "the real promisee," that is, "the promise must [have been] made to [it] in fact although not in form. It is not enough that the contract may operate to [Worldwide's] benefit. It must appear that the parties intend[ed] to recognize [Worldwide] as the primary party in interest and as privy to the promise." *Rey v. Penn Shipping Co.,* 277 F.2d 905, 906–07 (2d Cir.) (quoting *Pennsylvania Steel Co. v. New York City Ry.,* 198 Fed. 721, 749 (2d Cir.1912)), *cert. denied,* 364 U.S. 829, 81 S.Ct. 68, 5 L.Ed.2d 56 (1960); *see Port Chester Electrical Construction Corp. v. Atlas,* 40 N.Y.2d 652, 655, 357 N.E.2d 983, 986, 389 N.Y.S.2d 327, 330 (1976).

The Morgan-Royal contract evidences no intent to benefit Worldwide. To the extent that the circumstances underlying the letter-of-credit arrangement manifest any intent to benefit any third party, that party is Vicini. Worldwide asked Morgan to issue the letter of credit of which the guarantee was a condition expressly for the benefit of Vicini, because Vicini was uneasy about Worldwide's failure to pick up the sugar as of March 31, 1982. The essence of the Morgan letter of credit was "the substitution of a bank's credit for that of a less credible obligor." H. Harfield at 29; *see Venizelos,* 425 F.2d at 464–65. Additional arrangements were made solely for Vicini's benefit, ostensibly to replace the means of payment contemplated by the December 18, 1981 contract.

■ To the extent that a beneficiary of the guarantee itself can be isolated, that beneficiary was Morgan. Although the contractual relationship between World-

wide and Morgan is not at issue in this suit, see Venizelos, 425 F.2d at 465 (contract between issuing bank and its customer is separate contract), Morgan's willingness to issue a letter of credit for Worldwide's account depended on its assessment of Worldwide's overall financial position. That position, and therefore Worldwide's ability to reimburse Morgan, would have been injured if Worldwide had been unable to obtain and sell the Vicini sugar. Mr. Siebel of Morgan made clear that this concern lay at the heart of Morgan's request for a guarantee as a condition of the letter of credit: the bank was "concerned about the financial viability of our client since we would have an outstanding line of credit available for their use." Siebel Deposition at 71. The only way that Morgan could protect itself was to make sure that Vicini would deliver the sugar to Worldwide, which would sell it and deposit the proceeds in its account at Morgan. Therefore, the benefit to Worldwide from Vicini's guarantee can only be described as incidental, since, under the letter-of-credit transaction (of which the guarantee was an inseparable part) Worldwide was simply a conduit to funnel back to Morgan the funds which Morgan had advanced. Cf. John Berger & Son Co., 174 Misc. at 977–78, 22 N.Y.S.2d at 471 (guarantee whose purpose was to induce buyer to assume bonds as part of sale not made for benefit of bondholders). The fact that funds were to pass through Worldwide's hands on their way to Morgan cannot transform Worldwide into an intended beneficiary of the Morgan-Royal contract.

C. *Immediacy of the Benefit to Worldwide*

■ Worldwide relies upon its banker's testimony that "since Morgan acts for the buyer, it was for the buyer's ultimate benefit" that Morgan demanded a guarantee from Royal. Plaintiff's Memorandum at 7–8; Siebel Deposition at 78–79. It claims that this language proves—or is sufficient to raise as issue of fact concerning—intent to benefit a third party, since the benefit to that party is "the direct result of perform-ance and so within the contemplation of the parties." *E.g., Goodman-Marks Associates v. Westbury Post Associates,* 70 A.D.2d 145, 148, 420 N.Y.S.2d 26, 28–29 (1979). But this testimony and the line of authority referred to by plaintiff fail as a matter of law. Even if we assume—as we must—that a benefit to Worldwide was sufficiently within the contemplation of Morgan and Royal to make that benefit intentional, that benefit was not "sufficiently immediate ... to indicate the assumption by the contracting parties of a duty to compensate [it] if the benefit is lost." *Burns Jackson Miller Summit & Spitzer,* 59 N.Y. at 336, 451 N.E.2d at 469, 464 N.Y.S.2d at 722.

The cases employing the presumption that the fact that a benefit was furnished directly to the third party—in this case, that the sugar was to be loaded onto Worldwide's vessels—indicates an intention to benefit simply do not answer the question whether the contracting parties intend for the third party to have an action for breach of the contract. In this case, no evidence indicates that the contracting parties intended that Worldwide obtain through the guarantee an additional party against whom it might bring suit if Vicini were to violate its December 18 agreement. Because Royal's guarantee was an integral part of the letter-of-credit transaction, it was only intended to come into play if Vicini sought payment for the sugar under the letter of credit. There is no reason why Vicini, which already was worried about Worldwide's performance under the December 18 contract, would ask its bank to provide Worldwide with a guarantee. Vicini could not have wanted Worldwide to receive additional rights when it had not performed its duties under the existing contract. Nor is any reason or evidence offered why Royal would extend its guarantee after the termination of the arrangement under which it would at least have obtained its fees as advising bank. To permit recovery from an advising bank on the basis of a terminated letter-of-credit arrangement would impose an unac-

ceptable burden on such banks, since they are in no sense involved in the underlying contract which survives the end of their role. Even to allow cases based on claims against such non-involved banks to proceed to trial would create unwarranted uncertainty which ultimately would both impair bank financing and increase the costs of obtaining such financing.

■ Finally, no breach of the Morgan-Royal contract occurred. That contract contemplated the following general course of events: (1) Royal would issue a guarantee; (2) Morgan would issue a letter of credit; (3) Vicini would draw upon the letter; (4) Vicini would load the sugar on Worldwide's ships when they arrived in the Dominican Republic. If Vicini had performed step 3, but refused to perform step 4, then Vicini would have breached the Morgan-Royal contract. But Morgan never performed the second step and Vicini never performed the third. Thus, it cannot be said that Vicini's refusal to load the ship sent in late July was a breach of the Morgan-Royal contract, of which the guarantee was a part. If anything, Vicini's refusal was a breach of the Worldwide-Vicini contract, and Worldwide's remedy lies against Vicini alone. Having short-circuited the Morgan-Royal agreement, Worldwide cannot sue Royal for its non-breach.