OPINION OF THE COURT
Meyer, J.
The Taylor Law proscription against strikes by public employees neither preempts the right of persons injured by an unlawful strike to sue for damages nor provides a private right to sue for violation of its provisions. The causes of action pleaded by plaintiffs are, however, either not recognized under New York law or as pleaded do not sufficiently state a cause of action. The order of the Appellate Division should, therefore, be affirmed, with costs.
I
This appeal involves separate action by two New York City law firms to recover damages resulting from the *323 April, 1980 transit strike. The first, begun in Queens County by Burns Jackson Miller Summit & Spitzer (“Burns Jackson”), is a class action[1] against the Transport Workers Union of America, AFL-CIO (TWU), the Amalgamated Transit Union, AFL-CIO (ATU), Local 100 of TWU, Locals 726 and 1056 of ATU and their respective officers. It alleges that the strike was intentional and in violation of both section 210 of the Civil Service Law[2] and of a preliminary injunction issued March 31, 1980 by the Supreme Court and seeks damages of $50,000,000 per day for each day of the strike. The complaint sets forth two causes of action: prima facie tort and public nuisance.
The second action, begun in New York County by Jackson, Lewis, Schnitzler and Krupman (“Jackson, Lewis”), likewise alleges an intentional strike in violation of the statute and preliminary injunction. It was, however, brought only against the TWU and its Local 100, and officers of both, sought but $25,000 in damages, and did not ask class action status. It declared on six causes of action: for violation of the Taylor Law, prima facie tort, intentional interference with plaintiff’s business, willful injury, conspiracy and breach of plaintiff’s rights as third-party beneficiary of the contract between defendant unions and the New York City Transit Authority (NYCTA) and the Manhattan and Bronx Surface Transit Operating Authority (MABSTOA).
By stipulation the New York County action was removed to Queens and joined with the Queens action for trial. Thereafter defendants moved pursuant to CPLR 3211 (subd [a], par 7) to dismiss both actions for failure to state a cause of action. Special Term denied the motions, except as to the Jackson, Lewis contract cause of action (108 Misc 2d 458). On cross appeals to the Appellate Division, that court, in an extensive opinion, modified the order appealed from to dismiss both complaints in their entirety (88 AD2d *324 50). Both plaintiffs appeal to us as of right (CPLR 5601, subd [a]).[3] We conclude (1) that the Taylor Law was neither intended to proscribe private damage actions by persons caused injury by a strike by public employees nor to establish a new private right of action for such damages, and (2) that the complaints fail to state a cause of action for (a) prima facie tort, (b) public nuisance, (c) intentional interference with business, or (d) breach of plaintiffs’ rights as third-party beneficiary of defendants’ contracts with NYCTA or MABSTOA.[4] We, therefore, affirm.
II
The effect of the Taylor Law, whether as preemptive of previously permissible private damage actions or as initiating a new form of private action for damages resulting from a strike in violation of its provisions, turns on what the Legislature intended. The general rule is and long has been that “when the common law gives a remedy, and another remedy is provided by statute, the latter is cumulative, unless made exclusive by the statute” (Candee v Hayward, 37 NY 653, 656; accord Hardmann v Bowen, 39 NY 196, 198; Jordan & Skaneateles Plankroad Co. v Morley, 23 NY 552, 554; Wetmore v Tracy, 14 Wend 250, 255). Likewise, as we noted in Amberg v Kinley (214 NY 531, 535-536): “Whether a statute gives a cause of action to a person injured by its violation, or whether it is intended as a general police regulation, and the violation made punishable solely as a public offense ‘must to a great extent depend on the purview of the legislature in the particular statute and the language which they have there employed.’ (Atkinson v New Castle & Gateshead W.W. Co., L.R. [2 Exch. Div.] 441; Taylor v L.S. & M.S. Ry. Co., 45 Mich. 74.)” (See, also, Abounader v Strohmeyer & Arpe Co., 243 NY 458,463-464; Daggett v Keshner, 284 App Div 733, 738, mod on other grounds 6 AD2d 503, affd 7 NY2d 981.)
*325 The far better course is for the Legislature to specify in the statute itself whether its provisions are exclusive and, if not, whether private litigants are intended to have a cause of action for violation of those provisions. Absent explicit legislative direction, however, it is for the courts to determine, in light of those provisions, particularly those relating to sanctions and enforcement, and their legislative history, and of existing common-law and statutory remedies, with which legislative familiarity is presumed, what the Legislature intended (see Merrill Lynch, Pierce, Fenner & Smith v Curran, 456 US 353, 374-383; Middlesex County Sewerage Auth. v National Sea Clammers Assn., 453 US 1, 13). Whether a private cause of action was intended will turn in the first instance on whether the plaintiff is “one of the class for whose especial benefit the statute was enacted” (Motyka v City of Amsterdam, 15 NY2d 134,139; Cort v Ash, 422 US 66, 78; Texas & Pacific Ry. Co. v Rigsby, 241 US 33, 39). But the inquiry does not, as plaintiffs suggest, end there, for to do so would consider but one of the factors involved in the Legislature’s determination. Important also are what indications there are in the statute or its legislative history of an intent to create (or conversely to deny) such a remedy and, most importantly, the consistency of doing so with the purposes underlying the legislative scheme (Cort v Ash, supra, at p 78; accord Middlesex County Sewerage Auth. v National Sea Clammers Assn., supra, at p 17; Piper v Chris-Craft Inds., 430 US 1, 37-40; see Restatement, Torts 2d, § 847A, Comment i; Note, Private Damage Actions Against Public Sector Unions For Illegal Strikes, 91 Harv L Rev 1309, 1318 [hereafter “Note”]; McMahon & Rodos, Judicial Implication of Private Causes of Action: Reappraisal and Retrenchment, 80 Dickinson L Rev 167).
Analysis begins, of course, with the statute itself. It contains no explicit statement as to either exclusivity or intent to create a private cause of action. Examination of the history and genesis of the Taylor Law leads us to conclude, however, that it is cumulative, not exclusive, and was not intended to establish a new cause of action.
New York’s first statutory proscription against strikes by public employees was the Condon-Wadlin Act, passed in *326 1947 as a result of a strike by public school teachers in Buffalo (L 1947, ch 391; Civil Service Law, former § 108). It punished violation by automatic termination, and imposed severe restrictions on re-employment, precluding salary increases for a re-employed striker for three years and requiring that the re-employed person be treated as probationary for five years (Wolk, Public Employee Strikes — A Survey of the Condon-Wadlin Acts, 13 NY L Forum 69, 70-71 [hereafter “Wolk”]). Although held constitutional (Matter of Di Maggio v Brown, 19 NY2d 283), the harshness of its penalties resulted in their being enforced but twice over a period of 20 years (id., at p 289), and in widespread criticism and agitation for revision (Wolk, op. cit., p 72; Hanslowe, 1965 Survey of NY Law-Labor Relations Law, 17 Syracuse L Rev 183, 186 [hereafter “Hanslowe 1965”]). The Joint Legislative Committee on Industrial and Labor Conditions in its 1962 report proposed to replace the act, but that proposal failed of adoption and the 1963 Legislature simply adopted ameliorative amendments (Hanslowe 1965, pp 186-187). The embargo on salary increase for a reemployed striker was reduced from three years to six months, the probationary period from five years to one year, and a sanction of loss of two days’ pay for each day an employee was on strike was added. Those amendments were stopgap measures, however, the act expressly providing that they would expire on July 1,1965, and expire they did when Governor Rockefeller vetoed the Rosetti-Lentol bill intended to establish a “less punitive, more labor-conscious measure” on the ground, among others, that it would “undermine the deterrent to strikes by public employees” (Wolk, pp 72-73).
On January 15, 1966, prompted by a massive strike of New York City transit workers which began January 1, 1966, Governor Rockefeller appointed a Committee on Public Employee Relations, chaired by Professor George W. Taylor. The committee was charged “to make legislative proposals for protecting the public against the disruption of vital public services by illegal strikes, while at the same time protecting the rights of public employees” and by March 31, 1966 issued its Final Report recommending that: “(1) The Condon-Wadlin Law should be repealed and *327 replaced by a statute which, as more particularly described below and in the relevant parts of this report, would (a) grant to public employees the right of organization and representation, (b) empower the State, local governments and other political subdivisions to recognize, negotiate with, and enter into written agreements with employee organizations representing public employees, (c) create a Public Employment Relations Board to assist in resolving disputes between public employees and public employers, and (d) continue the prohibition against strikes by public employees and provide remedies for violations of such prohibition” (New York Governor’s Committee on Public Employee Relations, Final Report, 1966, iv, 1 [hereafter “Final Report”]). With respect to illegal strikes, the committee noted the lack of success of the Condon-Wadlin provisions and proposed instead three deterrents: the injunctive power of the courts, but without monetary limit on the fine imposable for violation; the misconduct provisions of section 75 of the Civil Service Law as concerned individual employees; and as concerns the unions, suspension of privileges or decertification, as determined after hearing by the Public Employment Relations Board (Final Report, part 4).
A bill introduced in the Senate based on that report, and supported by the Governor, passed that body on June 7, 1966 (Hanslowe, 1966 Survey of NY Law-Labor Relations Law, 18 Syracuse L Rev 247, 253). The Assembly, however, on the same day passed its own bill, in which the only explicit sanction was discipline pursuant to section 75 of the Civil Service Law. The impasse between the two houses continued into the 1967 session, the Speaker of the Assembly originally opposing penalties altogether, but later modifying that position to permit penalties which would deter strikes “ ‘but not to such an extent that they would destroy unions’ ” (Wolk, p 75, citing Maiorana, Travia Proposes Strike Penalties, New York Times, March 3, 1967, p 22, col 6). The Taylor Law (officially the Public Employees’ Fair Employment Act) was finally adopted in April, 1967, effective September 1,1967 (L 1967, ch 392). It declared it to be “the public policy of the state and the purpose of this act to promote harmonious and cooperative *328 relationships between government and its employees and to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government” (Civil Service Law, § 200), granted public employees the rights of organization and representation (§§ 202, 203), empowered public employers to recognize employee organizations and provided for their certification (§ 204), created the Public Employment Relations Board to oversee employee relations (§ 205), and established other objective provisions governing the rights of public employees and their unions. Following the recommendations of the Taylor Committee, it continued the prohibition against public employee strikes (§210) but replaced Condon-Wadlin’s harsh penalties with provisions for injunction without limitation on the fine for violation (§ 211; Judiciary Law, § 751) and for discipline of individual strikers under section 75 of the Civil Service Law. It subjected the employee organization, however, only to forfeiture of dues checkoff for a period limited to 18 months (§ 210, subd 3, former par [f]), but significantly did not implement the Taylor Committee’s decertification recommendation (Collins, 1967 Survey of NY Law-Labor Relations Law, 19 Syracuse L Rev 308, 309).
Enactment of the 1967 law did not end the problem, however. In 1968, Governor Rockefeller re-established the Committee on Public Employee Relations and charged it to examine the experience under the Taylor Law. The committee reported its view that the law was “working well” and that the limited experience under it did not “provide an adequate basis for now recommending changes in the Act” (New York Governor’s Committee on Public Employee Relations, Interim Report, June 17,1968 [hereafter “Interim Report”], Transmittal Letter). Nevertheless, a number of changes were made in the act in 1969 (L 1969, ch 24). Striking employees became subject not only to disciplinary action but also to a one-year probationary period[5] and the deduction of two days’ pay for each day of violation was reinstated (Civil Service Law, § 210, subd 2). The imposition of penalties against employees and em *329 ployee organizations was made mandatory (§ 210, subds 2, 3) and the failure to seek their imposition was made subject to article 78 review at the instance of any taxpayer (originally § 210, subd 4; now § 213, subd e).
The same act made clear, however, the Legislature’s intent to protect employee organizations from destruction, even though they may have participated in an illegal strike. Thus, although the 18-month limitation on forfeiture of the union’s dues deduction privilege was removed, both that provision (Civil Service Law, § 210, subd 3, par [f]) and section 751 (subd 2, par [a]) of the Judiciary Law (dealing with the fines imposable for criminal contempt) were amended to make the union’s ability to pay a factor in the determination of the penalty to be assessed.
Against that background, for a number of reasons, legislative intent to provide a private remedy cannot be discerned. Although Jackson, Lewis is “one of the class for whose especial benefit the statute was enacted” and a right of action in a member of the class may be implied when clearly in furtherance of the legislative purpose (compare Abounader v Strohmeyer & Arpe Co., 243 NY 458, 465, supra [manufacturer held for fraud with respect to foodstuffs, without regard to privity because otherwise “the statute would be largely emasculated of possible benefits”], with Steitz v City of Beacon, 295 NY 51, 54-55 [private right of action against city for failure to quench a fire started by another will not be implied from a statute requiring the city to maintain a fire department, in view of the crushing burden that would be imposed]), the provisions of the present statute and the history of their enactment strongly suggest that a private action based upon the statute was not intended. True such an action would be a powerful deterrent to public employee strikes, but it would also, as the claim for damages in the Burns Jackson complaint suggests, impose a crushing burden on the unions and each of the employees participating in the strike, who could be held jointly and severally liable with the union for the damages resulting from violation (see as to overdeterrence, ALI Federal Securities Code [Proposed Official Draft], § 1722, subd [a]). It would do so, moreover, notwithstanding that the penalties of the Condon-Wadlin *330 Act were repealed “precisely because that was a statute punitive rather than constructive in nature” (Interim Report, p 20), notwithstanding the “unusually elaborate enforcement provisions, conferring authority to sue for this purpose both on government officials and private citizens” which strongly suggest that the Legislature “provided precisely the remedies it considered appropriate” (Middlesex County Sewerage Auth. v National Sea Clammers Assn., 453 US 1, 13, 15, supra),[6] and notwithstanding the 1966 decision in Jamur Prods. Corp. v Quill (51 Misc 2d 501) which had held that a private cause of action could not be implied from the Condon-Wadlin Act.
Implication of a private action is, moreover, inconsistent with the purposes of the Taylor Law. Its primary purposes, as both Taylor Committee reports emphasize, was to defuse the tensions in public employer-employee relations by reducing the penalties and increasing reliance on negotiation and the newly created Public Employment Relations Board as a vehicle toward labor peace (see Securities Investor Protection v Barbour, 421 US 412, 420; National R. R. Passenger Corp. v National Assn. of R. R. Passengers, 414 US 453, 464, reh den 415 US 952). A private action, which would impose per se liability without any of the limitations applicable to the common-law forms of action hereafter considered, would inevitably upset the delicate balance established after 20 years of legislative pondering. As the Washington Supreme Court has noted, “the schemes created by statute for collective bargaining and dispute resolution must be allowed to function as intended, without the added coercive power of the courts being thrown into the balance on one side or the other” (Burke & Thomas v International Organization of Masters, Mates & Pilots, 92 Wn 2d 762, 772; accord Lamphere Schools v Lamphere Federation of Teachers, 400 Mich 104, 131). Having explicitly directed that in assessing penalties PERB and the courts consider the union’s ability to pay and refused to enact a decertification provision, the Legislature must be *331 deemed to have negated the unlimited liability, not only to third parties but to public employers as well, and the consequent demise of public employee unions, that would result from recognition of a new statutory cause of action.
That no new per se action was contemplated by the Legislature does not, however, require us to conclude that the traditional, though more limited, forms of action are no longer available to redress injury resulting from violation of the statute. The penalties imposable by PERB and the courts for such a violation provide some solace, but no recompense, for those injured by acts which not only violate the statute but also constitute a breach of duty, independent of the statute, which common-law remedies made compensable. Although it is within the competence of the Legislature to abolish common-law causes of action (Montgomery v Daniels, 38 NY2d 41), there is no express provision to that effect in the statute, notwithstanding numerous amendments of the Taylor Law[7] after the decision by the Second Department in Caso v District Council 37, Amer. Federation of State, County & Municipal Employees, AFL-CIO (43 AD2d 159, 160-162; see, also, People v Vizzini, 78 Misc 2d 1040, 1043-1044), holding that law nonexclusive and a public nuisance action maintainable. It is one thing to conclude that limitation of penalties payable to the public treasury and denial of a decertification sanction are inconsistent with the imposition of a new strict liability cause of action, and quite another to conclude that persons damaged by action tortious before public strikes were declared illegal should be denied the recompense to which they would be otherwise entitled in the interest of labor peace. That indemnification against such liability may become a union demand in the bargaining process and prolong an illegal strike must be recognized (cf. Burke & Thomas v International Organization of Masters, Mates & Pilots, 92 Wn 2d 762, 775, supra; Note, 91 Harv L Rev, at p 1320) but is, in our view, an insufficient basis, absent clearer indication of legislative intent, to hold the statute pre-emptive of all common-law causes of action and thus, as the Supreme Court has said in another context, “permit *332 the result, extraordinary in our jurisprudence, of a wrongdoer shifting responsibility for the consequences of his [actions] onto his victim” (Wyandotte Co. v United States, 389 US 191, 204). We are fortified in that conclusion by similar decisions of courts of other States (Fulenwider v Firefighters Assn. Local Union 1784, 649 SW2d 268 [Tenn]; 3 CCH Public Bargaining Cases, par 37630; Burke & Thomas v International Organization of Masters, Mates & Pilots, 92 Wn 2d 762, supra; see Pasadena Unified School Dist. v Pasadena Federation of Teachers, 72 Cal App 3d 100; State ex rel. Danforth v Kansas City Firefighters Local No. 42, AFL-CIO, 585 SW2d 94 [Mo]; cf. Lamphere Schools v Lamphere Federation of Teachers, 400 Mich 104, supra).
Ill
The conclusion that the statute is not exclusive requires that we consider the common-law causes of action asserted in the two complaints, the allegations of which are for purposes of such consideration deemed true (219 Broadway Corp. v Alexander’s, Inc., 46 NY2d 506; see 4 Weinstein-Korn-Miller, NY Civ Prac, par 3211.29). We conclude, for the reasons spelled out below, that neither complaint sufficiently states a cause of action.
A
The cause of action common to the two complaints is that in prima facie tort. The elements of such a cause of action as stated in prior New York cases are (1) intentional infliction of harm, (2) resulting in special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful (ATI, Inc. v Ruder & Finn, 42 NY2d 454, 458; see Wehringer v Helmsley-Spear, Inc., 91 AD2d 585, affd 59 NY2d 688; 2 NY PJI 624). Plaintiff suggests, however, that it is anomalous to deny a cause of action on the ground that the injury-causing act was imlawful and the balancing analysis espoused in Comment e of section 870 of the Restatement of Torts, Second, lends some credence to that argument.
It can be argued that unlawful acts are not covered by prima facie tort because they will normally be compensable in traditional tort forms of action, unless the policy underlying the traditional tort excludes such an act. But it *333 can also be argued that the reference to “lawful” acts was a result of the genesis of prima facie tort, which was conceived as a means of avoiding a “hardening of * * * categories” (Morrison v National Broadcasting Co., 24 AD2d 284, 287 [Breitel, J.], revd on other grounds 19 NY2d 453), by providing redress for an act, even though otherwise lawful and not encompassed by a traditional tort, done solely for an improper or evil motive.
As it has evolved prima facie tort is neither a “ ‘catch-all’ alternative for every cause of action which cannot stand on its legs” (Belsky v Lowenthal, 62 AD2d 319, 323, affd 47 NY2d 820), nor will the existence of a traditional tort foreclose alternative pleading of prima facie tort, though, of course, double recoveries will not be allowed (Board of Educ. v Farmingdale Classroom Teachers Assn., Local 1889, AFT AFL-CIO, 38 NY2d 397, 406). The “categories” argument, therefore, need not exclude an unlawful act, as, indeed, the Restatement of Torts, Second, has recognized (§ 870, Comment h).
We need not now decide whether an unlawful act can be the predicate for prima facie tort, for there is no recovery in prima facie tort unless malevolence is the sole motive for defendant’s otherwise lawful act or, in Justice Holmes’ characteristically colorful language, unless defendant acts from “disinterested malevolence” (American Bank & Trust Co. v Federal Bank, 256 US 350, 358; see Squire Records v Vanguard Recording Soc., 25 AD2d 190, affd 19 NY2d 797; Morrison v National Broadcasting Co., supra, at p 287; 2 NY PJI 624), by which is meant “that the genesis which will make a lawful act unlawful must be a malicious one unmixed with any other and exclusively directed to injury and damage of another” (Beardsley v Kilmer, 236 NY 80, 90).
Here the prima facie tort causes of action cannot stand because, although they allege intentional and malicious action, they do not allege that defendants’ sole motivation was “disinterested malevolence.”
B
The Burns Jackson complaint alleges in its second cause of action that the strike engaged in by defendants “caused *334 widespread economic dislocation and damage and substantial interference with the public health, safety, comfort and convenience within the New York City metropolitan area, thereby creating a nuisance.” Although the allegation of substantial interference with the common rights of the public at large is a sufficient predicate for a private action based on public nuisance (see Caso v District Council 37, Amer. Federation of State, County & Municipal Employees, AFL-CIO, 43 AD2d 159, supra; and generally Copart Ins. v Consolidated Edison Co. of N. Y., 41 NY2d 564, mot for rearg den 42 NY2d 1102; Restatement, Torts 2d, § 821B; 2 NY PJI 669-670) and additional expense in the performance of a specific contract can constitute the “private and peculiar injury” required for a private action (Wakeman v Wilbur, 147 NY 657, 663; Callanan v Gilman, 107 NY 360, 370; Restatement, Torts 2d, § 821C, Comment i), it is, nevertheless, true that the harm suffered must be “of a different kind from that suffered by other persons exercising the same public right” and that “invasions of rights common to all of the public should be left to be remedied by action by public officials” (Restatements, Torts 2d, § 821C, Comment b; see, also, Comment h; Prosser, Private Action For Public Nuisance, 52 Va L Rev 997, 1008; 2 NY PJI 671).
The damages here alleged are for additional out-of-pocket expenses resulting from defendants’ conduct and for loss of business profits. Such damages, though differing as to the nature of the expense or the particular contract from which greater profit was expected, were, as the Appellate Division noted (88 AD2d, at p 71), suffered by every person, firm and corporation conducting his or its business or profession in the City of New York. Indeed, the class as envisioned by plaintiff’s complaint consists of “professional and business entities conducted for profit * * * that rely on the public transportation system serving the City of New York to enable them to practice their profession and to operate their businesses and that have been damaged as a consequence of the defendants’ disruption of the service provided by that system.”
When the injury claimed to be peculiar is of the same kind suffered by all who are affected, when it “is common *335 to the entire community” (Francis v Schoellkopf, 53 NY 152, 154), or, as Prosser put it (52 Va L Rev, p 1015), “it becomes so general and widespread as to affect a whole community,” the injury is not peculiar and the action cannot be maintained. Cases such as Francis v Schoellkopf (supra), and Lansing v Smith (4 Wend 9) are not to the contrary, for the injuries they involved were not common to the entire community, though the argument made was that a number of persons had been damaged in the same way. The economic loss which results from a transit strike is not recoverable in a private action for public nuisance because the class includes all members of the public who are affected by the strike (Prosser, 52 Va L Rev, p 1009; Note, 91 Harv L Rev, p 1331).
C
The two remaining causes of action may be dealt with more summarily. Jackson, Lewis’ brief devotes but a two-sentence footnote to its third cause of action for intentional interference with business. The complaint alleges that defendants “intentionally and maliciously interfered with the business of the plaintiff” to plaintiff’s special damage in that the productivity of partners and employees was reduced and extra expense incurred. What is apparently sought to be pleaded, therefore, is a claim within section 766A of the Restatement of Torts, Second, for causing plaintiff’s performance of its contracts with its clients to be more expensive or burdensome.
No New York case recognizing such a cause of action has been cited or has been found by us. We need not, however, now decide whether such a cause of action should be recognized by us in other situations. The interference here alleged was but an incidental result of defendants’ conduct and, although that conduct was in violation of the Taylor Law, we conclude that as a matter of policy we should not recognize a common-law cause of action for such incidental interference when the Legislature has, in establishing an otherwise comprehensive labor plan for the governance of public employer-employee relations, failed to do so (De Angelis v Lutheran Med. Center, 58 NY2d 1053; Albala v City of New York, 54 NY2d 269; Donohue v *336 Copiague Union Free School Dist., 47 NY2d 440; Drago v Buonagurio, 46 NY2d 778; cf. Restatement, Torts 2d, § 766A, Comment e; and § 767, Comments d, h).
The Jackson, Lewis contract cause of action alleges that contracts existed between defendant unions and NYCTA and MABSTOA up to and including March 31, 1980, that they continued by operation of law until negotiation of successor agreements ended, that between April 1 and April 11,1980, defendants and their members engaged in a strike against NYCTA and MABSTOA in violation of the contracts, that plaintiff is a third-party beneficiary of the contracts and that plaintiff was damaged by their breach.
A third party may be the beneficiary of a public as well as a private contract (see Kornblut v Chevron Oil Co., 62 AD2d 831, affd 48 NY2d 853; 22 NY Jur 2d, Contracts, § 280). He may recover, however, only by establishing (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediaté, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost (Port Chester Elec. Constr. Corp. v Atlas, 40 NY2d 652, 655; Associated Flour Haulers & Warehousemen v Hoffman, 282 NY 173; Moch Co. v Rensselaer Water Co., 247 NY 160).
Existence of a valid and binding contract is, thus, a sine qua non (see Dunning v Leavitt, 85 NY 30, 35; 2 Williston, Contracts [3d ed], §§ 347, 394; 22 NY Jur 2d, Contracts, § 281). Here, however, the complaint itself states that the contracts expired on March 31,1980, and its suggestion that they continued by operation of law under Matter of Triborough Bridge & Tunnel Auth (District Council 37 & Local 1396) (5 PERB 3064) is inconsistent with the limitation on the so-called “Triborough Doctrine” stated by us in Matter of Board of Coop. Educational Servs. of Rockland County v New York State Public Employment Relations Bd. (41 NY2d 753, 757-758). The contracts having expired before the strike, any rights of plaintiff as a third-party beneficiary of them expired with it (Fulenwider v Firefighters Assn. Local Union 1784, 649 SW2d 268 [Tenn], supra).
*337 Further reason why Jackson, Lewis’ contract cause of action cannot succeed is that plaintiff is but an incidental beneficiary of the collective bargaining agreement (Isbrandtsen Co. v Local 1291 of Int. Longshoremen’s Assn., 204 F2d 495), the “intention to assume an obligation of indefinite extension to every member of the public * * * [being] the more improbable when we recall the crushing burden that the obligation would impose” (Moch Co. v Rensselaer Water Co., 247 NY 160, 165, supra; see, also, Kornblut v Chevron Oil Co., supra).
For the foregoing reasons, the order of the Appellate Division should be affirmed, with costs.

. Class certification has never been sought or granted, however.

. It is undisputed that the 1980 transit strike was in violation of the antistrike provisions of subdivision 1 of section 210 of the Civil Service Law. In fact, several of the defendants herein were the subject of criminal contempt findings and fines (see New York City Tr. Auth. v Lindner, 83 AD2d 573, mots for lv to app dsmd 55 NY2d 701).

. Because that order brings up for review all aspects of the order appealed from, including so much as affirmed dismissal of Jackson, Lewis’ contract cause of action (Pan Amer. World Airways v Overseas Raleigh Mfg., 49 NY2d 982), the question certified to us by the Appellate Division was unnecessary and is not answered.

. Not argued in Jackson, Lewis’ brief in this court and, therefore, not considered by us are the fourth and fifth causes of action for willful injury and for conspiracy.

. The probationary period provision was, however, repealed by chapter 465 of the Laws of 1978.

. The more particularly does this follow from the failure of either the Taylor Committee’s 1966 Final Report or its 1968 Interim Report, both of which included comprehensive discussion of deterrents, to make any reference to a private cause of action.

. (L 1974, chs 283, 724, 725; L 1975, ch 850; L 1977, chs 216, 677, 678, 817; L 1978, ch 465; L 1981, chs 378, 814.)