John William **LOUDON**, Plaintiff,

v.

Nicholas **HAYEK**, SMH–Swiss Corp. for Microelectronics, Watchmaking Industries, Ltd., Fritz Ammann, Jacques Irniger and Swatch Watch U.S.A., Inc., Defendants.

No. 89 Civ. 1726 (WK).

United States District Court,
S.D. New York.

Sept. 20, 1989.

108

William Paul Nolan, Ferrer & Nolan, New York City, for plaintiff.

John M. Nonna, Werner, Kennedy & French, New York City, for defendants.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

At the July 31, 1989 oral argument of defendant Swatch Watch U.S.A.'s motion to dismiss and to strike, we dismissed plaintiff's sixth, seventh, ninth and tenth claims as against Swatch and struck paragraphs 10, 11, 12, 13, 20, 26 and 27 of the complaint. Plaintiff moves to reargue our decision with respect to the sixth, seventh and tenth claims and paragraph 20. We grant the motion to reargue. For reasons which follow, we adhere to our decision dismissing the sixth and seventh claims and striking paragraph 20. We modify our decision, however, so as to deny Swatch's motion to dismiss the tenth claim.

## BACKGROUND

Plaintiff John William Loudon has asserted ten causes of action against Swatch ("defendant"), his former employer: (1) Breach of employment agreement; (2) Breach of termination agreement; (3) Claim under New York Labor Law §§ 190–198–c for wages; (4) Claim under ERISA for failure to provide post-termination health and medical benefits; (5) Conversion of apartment leased by plaintiff, security deposit and furniture; (6) Intentional infliction of emotional distress; (7) Prima facie tort; (8) Slander; (9) Libel based upon an article published in *Modern Jeweler* magazine; (10) Libel based on letter to plaintiff informing him of the suspension of payments under the termination agreement.

## DISCUSSION

A. *Intentional infliction of emotional distress*

Plaintiff's sixth claim, for intentional infliction of emotional distress, is based on allegations that defendant (a) "forced" plaintiff to sign a termination agreement

(¶¶ 28–32, 64–69); (b) induced him to allow Swatch to use his apartment and furniture by promising to pay the rent and employment severance payments (¶¶ 33–36, 53–54, 82–88); (c) slandered him by calling him a "swindler" at a company-wide meeting (¶ 41); (d) libeled him in *American Jeweler* magazine and in his letter of termination (¶¶ 42, 116–124); (e) withheld wages due him and docked him for expenses (¶¶ 44, 70–74); (f) "blackballed" him in the industry (¶¶ 9, 45–46);[1] (g) falsely told the Ohio Bureau of Employment Services that he was not entitled to unemployment compensation (¶¶ 9, 47–51); (h) threatened reprisals if he brought this lawsuit (¶ 55); (i) breached its fiduciary duties under ERISA by failing to give him the opportunity to continue his health and life insurance (¶¶ 56, 75–81); (j) made him pay the bill for having office supplies shipped to his home (¶¶ 9, 57); and opened mail addressed to him that was received at Swatch's offices (¶ 20).

■ Under New York law, abusive or wrongful discharge of an at-will employee, without more, does not give rise to a cause of action for intentional infliction of emotional distress. *Murphy v. American Home Products Corp.* (1983) 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86, 89. The conduct complained of must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement (Second) of Torts § 46(1) comment d (1965)). *See, e.g., Weisman v. Weisman* (2d Dep't 1985) 108 A.D.2d 853, 854, 485 N.Y.S.2d 570, 570–71 (destroying windows of house where defendant and children were staying, exposing them to severe cold, and threatening defendant's life by displaying bullet while defendant and plaintiff were involved in religious divorce ceremony amounted to actionable conduct); *Ferrante ex rel. Ferrante v. Ferrante* (Sup.Ct. Queens County 1985) 127 Misc.2d 352, 353–55, 485 N.Y.S.2d 960, 961–63 (hitting, refusing to buy food for, throwing a fan at, and placing food on high shelves out of reach of elderly plaintiff in poor physical condition surpassed bounds of decency and gave rise to cause of action for mental distress). Here, however egregious defendant's alleged conduct may have been, it cannot under the above authorities constitute intentional infliction of emotional distress. We adhere to our decision to dismiss the sixth claim.

**B. *Prima facie tort***

■ Based on substantially the same allegations as those employed to support his claim for intentional infliction of emotional distress, plaintiff asserts a claim for prima facie tort. The elements of prima facie tort are: "(1) intentional infliction of harm, (2) resulting in special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful." *Burns Jackson Miller Summit & Spitzer v. Lindner* (1983) 59 N.Y.2d 314, 332, 464 N.Y.S.2d 712, 720, 451 N.E.2d 459, 467. Special damages must be alleged "with sufficient particularity to identify actual losses and be related causally to the alleged tortious acts." *Luciano v. Handcock* (3d Dep't 1980) 78 A.D.2d 943, 433 N.Y.S.2d 257, 258. *See also Sbrocco v. Pacific Fruit, Inc.* (S.D.N.Y.1983) 565 F.Supp. 15, 16; *Kalso Systemet, Inc. v. Jacobs* (S.D.N.Y.1979) 474 F.Supp. 666, 671.

We note that " '[p]rima facie tort [is not] a "catch-all" alternative for every cause of action [that] cannot stand on its [own] legs.' " *Church of Scientology v. Siegelman* (S.D.N.Y.1982) 94 F.R.D. 735, 738, *quoting Belsky v. Lowenthal* (1st Dep't 1978) 62 A.D.2d 319, 322, 405 N.Y.S.2d 62, 65. Prima facie tort "cannot be allowed in circumvention of the unavailability of a tort

---

1. Plaintiff's allegation of "blackballing" consists of the following: Plaintiff unsuccessfully attempted to interview for a position at Revlon. A Swatch vice-president subsequently told plaintiff that he had been told that Revlon declined to interview him because "Revlon had heard there were rumors of shady dealing by previous Swatch management." There is no allegation that anyone at Swatch affirmatively sought to poison Revlon or any other company against plaintiff. Thus, the blackballing allegation is in fact an allegation that plaintiff was damaged by the slander and libel alleged elsewhere in the complaint.

claim for wrongful discharge or the contract rule against liability for discharge of an at-will employee." *Murphy,* 58 N.Y.2d at 304, 461 N.Y.S.2d at 237, 448 N.E.2d at 91. The doctrine developed to provide a remedy for civil wrongs that did not fit into the traditional legal categories. "The need for the doctrine of prima facie tort arises only because the specific acts relied upon—and which it is asserted caused the injury—are not, in the absence of the intention to harm, tortious, unlawful, and therefore actionable." *Ruza v. Ruza* (1st Dep't 1955) 1 A.D.2d 669, 146 N.Y.S.2d 808, 811,

"Thus," under *Ruza,* "where specific torts account for all the damages sustained, ... prima facie tort does not lie." *Id.* In the subsequent case of *Board of Education v. Farmingdale Classroom Teachers* (1975) 38 N.Y.2d 397, 406, 380 N.Y.S.2d 635, 645, 343 N.E.2d 278, 284, however, the Court of Appeals cautioned against "blindly" applying the *Ruza* rule and suggested that "there may be instances when the traditional tort cause of action will fail and plaintiff should be allowed to assert this alternative claim." This case is not one of those instances because, as the court in *Belsky, supra,* noted, "[i]t would make little sense to hold that plaintiff may not prevail on a cause of action, having failed to establish certain elements, which are essential thereto, and then in the exercise of flexibility, apply a different name to it, and without correcting any of the fatal defects, permit the cause of action (absent a unique quality) to stand." If the damages alleged stem from traditional legal claims and the jury finds that any or all of those claims are lacking, it would be unfair to give plaintiff another bite at the apple by allowing the jury to consider the alternate claim of prima facie tort.

Plaintiff sets forth a laundry list of damages but fails to allege how they might be causally related to the prima facie tort rather than to the other, more traditional, claims alleged. Plaintiff's alleged loss of salary, bonuses and vacation pay (¶ 94(i)–(v)) resulted from his dispute with his employer as ·to the employment and termination agreements alleged in claims one, two and three. The loss of the apartment security deposit and furniture (¶ 94(vi)–(vii)) arose out of the alleged conversion alleged in claim five. Similarly, the alleged loss of health and life insurance (¶ 94(viii)–(ix)) arose out of his ERISA claim alleged in claim four, and his alleged employment difficulties (¶ 94(xi)–(xiv)) related to his defamation claims alleged in claims eight, nine and ten. Although "the existence of a traditional tort [does not] foreclose alternative pleading of prima facie tort", "double recoveries" are not allowed. *Lindner,* 59 N.Y.2d at 333, 464 N.Y.S.2d at 720, 451 N.E.2d at 467. In this case, prima facie tort is unavailable because none of the damages alleged are not attributable to other claims specifically alleged and a double recovery would be all that was available to plaintiff. *But see Sadowy v. Sony Corporation of America* (S.D.N.Y.1980) 496 F.Supp. 1071 (allowing prima facie tort, injurious falsehood and slander resulting in lost income to be pled in the alternative).

■ Plaintiff's remaining two catagories of damages cannot, as a matter of law, be recovered in prima facie tort. First, that plaintiff may have incurred "the enormous emotional and physical distress and monetary costs of a divorce, including legal fees and division of property" (¶ 94(x)) is unfortunate, but the complaint does not suggest a sufficient causal relationship between the alleged bad acts of the defendant and the divorce. Second, plaintiff cites no applicable authority (and we have found none) for the proposition that an allegation of prima facie tort provides a basis for shifting the traditional American rule that each party bears its own litigation costs (¶ 94(xv)).

Since we find no sufficient allegation of damages caused by the alleged prima facie tort, we adhere to our decision to dismiss the seventh claim for prima facie tort.

### C. *Libel based on Irniger letter*

■ Plaintiff alleges libel based on an April 15, 1988 letter written by defendant's president Jacques Irniger that stated that "[t]he information developed to date raises serious questions regarding [plaintiff's] performance with (a) the terms of the Em-

ployment Letter Agreement dated July 31, 1987, (b) your duties as an employee of Swatch, and (c) the terms of the Termination Agreement dated March 15, 1988 between you and Swatch. Under the circumstances, we are suspending payments to you under the provisions of the Termination Agreement pending our further investigation" (¶ 119). It is further alleged that a Swatch employee other than the president, in response to plaintiff's inquiries about termination payment, asked him if he had received a letter from Swatch and subsequently forwarded the Irniger letter, supporting a fair inference that Swatch had published the letter to that employee (¶ 42).[2]

We reject defendant's argument that, under the standard synthesized in *Davis v. Ross* (2d Cir.1985) 754 F.2d 80, the statement cannot be libelous *per se* and that therefore the complaint must be dismissed for failure to plead special damages. We determine that the words are susceptible of only one meaning—that Swatch had reason to believe that plaintiff was guilty of some misconduct—and that an ordinary person would find the statement "reasonably susceptible of a defamatory connotation." *Id.* at 82, *quoting James v. Gannett Co.* (1976) 40 N.Y.2d 415, 419, 386 N.Y.S.2d 871, 874, 353 N.E.2d 834, 837. We therefore deny defendant's motion to dismiss the tenth claim.

D. *Paragraph twenty*

 Plaintiff seeks to reargue our decision pursuant to Fed.R.Civ.P. 12(f) to strike paragraph twenty of the complaint as "immaterial, impertinent, or scandalous matter." In that paragraph, it is alleged that plaintiff's mail was opened by a committee of Swatch employees that did not include plaintiff. In light of our decision, *supra*, dismissing plaintiff's claim for prima facie tort, the allegation is immaterial. In any event, there is no right of privacy under New York law that would give rise to a claim for recovery based on the allegation

that defendant opened plaintiff's mail without permission. *Cf. Hurwitz v. United States* (2d Cir.1989) 884 F.2d 684 (no cause of action under Federal Tort Claims Act for unauthorized mail opening because New York courts do not recognize a right of privacy). Thus, we adhere to our decision to strike paragraph twenty.

### CONCLUSION

We grant plaintiff's motion to reargue. We adhere to our decision of July 31, 1989 except that we deny Swatch's motion to dismiss the tenth claim.

SO ORDERED.

---

**2.** That the complaint contained this allegation was not called to our attention at the oral argument.