OPINION OF THE COURT
Shirley Fingerhood, J.
The question presented on this motion is whether Medicare beneficiaries have a private right of action against a hospital for refund of amounts they have paid for physicians’ services in excess of those permitted by Federal and State limiting charge laws. Defendant (hereinafter referred to as the hospital or Memorial) moves to dismiss the complaint contending, first, that those statutes do not create private rights of action; and second, that the limiting charge laws do not apply to hospitals, although Memorial has voluntarily complied with them to the best of its ability.
Under the Medicare Part B program[1] (42 USC § 1395 Q]-[w]), which provides medical insurance for physicians’ services for the aged and disabled, payment to a health care provider for a *444 physician’s services may be made in one of two ways: directly if the provider accepts assignment, i.e., is a participating provider; or if the provider does not accept assignment by the patient who is reimbursed by Medicare for an amount approved for the service less a copayment.
Defendant is the billing agent for Memorial Sloan-Kettering Hospital which does not accept assignment for its physicians’ services to Medicare recipients. Accordingly, it submits claim forms to Medicare listing the services provided by the physicians and the amounts charged for each service.
Medicare reviews the claim forms of nonparticipants and determines the amounts approved for reimbursement. Prior to January 1, 1992, those amounts were based on a "reasonable charge” standard premised on such criteria as the physician’s customary fees and those in the locality. Thereafter, a fee schedule was promulgated which was subject to "modifiers” for unusually complex procedures. Requests for modifiers were made on the claim form by listing the service as "Code 22”. Many of the services performed by the doctors employed by Memorial Sloan-Kettering are designated "Code 22” as the hospital mainly treats cancer patients with difficult medical problems.
Effective January 1, 1991 the United States and New York State each enacted laws which limit the percentage of an approved fee which a nonparticipating physician was allowed to charge a Medicare beneficiary. The Federal limiting charge law, 42 USC § 1395w-4, mandated that in 1991 a physician charge no more than 125% of the amount approved by Medicare; for 1992 the percentage was reduced to 120%; after 1993 it was to be 110% or lower. The New York law, Public Health Law § 19, capped a physician’s charges at 115% of the Medicare approved amount for 1991-1992. Accordingly, the court will first discuss the applicability of the State law which has not been preempted by the Federal Medicare Act. (Medical Socy. v Cuomo, 777 F Supp 1157 [1991].)
Subdivision (4) of New York’s Public Health Law § 19 provides: "Notwithstanding any inconsistent provision of this chapter, a physician who is determined, after opportunity for a hearing, to have violated the provisions of this section shall be subject for the first violation to a fine of not more than one thousand dollars nor less than the greater of three times the amount collected, or, if not collected, three times the amount charged, in excess of the limitations * * * and, for each *445 additional violation committed within five years of the date of an immediately preceding violation * * * to a fine of not more than five thousand dollars nor less than the greater of one thousand dollars or three times the amount collected, or, if not collected, three times the amount charged, in excess of the limitations * * * In addition * * * the physician shall refund to the beneficiary the amount collected in excess of the limitations” (emphasis added).
That subdivision provides penalties for overcharging when an overcharge has been paid to the physician and when one has not been paid. In addition it directs that physicians refund collected overcharges to Medicare beneficiaries. It is the latter provision — not the imposition of a penalty for a violation of the statute — which plaintiffs seek to enforce by this suit.
Because section 19 does not explicitly provide for actions by Medicare beneficiaries against overcharging providers of physicians’ services, the court must determine whether a private right of action may be implied. The primary question to be considered is whether the Legislature intended to create a private remedy. (See, Touche Ross & Co. v Redington, 442 US 560, 568 [1979].)
In determining whether a private right of action was intended, a court must consider (1) whether the person asserting the right is one for whose special benefit the statute was enacted; (2) whether there are any indications in the statute or the legislative history of an intent to create or deny such a remedy; and (3) whether implying such a remedy is consistent "with the purposes underlying the legislative scheme.” (Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 325 [1983].)
The first criterion is met: the plaintiffs are clearly within the class of persons that section 19 of the Public Health Law intended to benefit. Second, the statute’s direction that "the physician shall refund to the beneficiary the amount collected in excess of the limitations” indicates an intent to create a remedy for the beneficiary. Third, implying a right to sue for such refunds is consistent with the purpose of the Legislature, i.e., to protect Medicare beneficiaries from incurring burdensome expenses for physicians’ services. (See, Governor’s Mem, 1990 McKinney’s Session Laws of NY, at 2729 [approving the bill which states: "(The) practice of charging more than the Medicare rate, known as 'balance billing’, costs Medicare beneficiaries in the State as much as $280 million a year out- *446 of-pocket for health care. This amount is over and above the 20 percent co-payment for which Medicare beneficiaries are responsible. The bill will help ensure that quality medical care continues to be affordable to all elderly and disabled Medicare participants”].)
The purpose of the bill was to provide "immediate relief to many seniors, long burdened by excessive medical overcharges.” (Letter to Governor Cuomo from Assemblyman Harenberg, Chairman of the Comm for the Aging, Bill Jacket, L 1990, ch 572.) As the legislation was intended to relieve Medicare recipients from excessive medical costs, allowing a private right of action for refund of overcharges is certainly consistent with that purpose. (Cf., Carpenter v City of Plattsburgh, 105 AD2d 295 [3d Dept], affd 66 NY2d 791 [1985].)
In support of its position that plaintiffs’ action may not be maintained — and that payments in excess of the legal limitation need not be refunded — defendant relies on the Medicare administrators’ difficulties in implementing the law and the changes in their positions. The hospital complains of "the government directives regarding an exceedingly complex and poorly implemented regulatory scheme”. It points to similar complaints to Governor Cuomo by plaintiff Medicare Beneficiaries Defense Fund (hereinafter MBDF) that the proposed legislation "contained inadequate provisions to assure effective implementation”.[2]
Memorial’s attribution of any excessive billing on its part to the inadequacies of the Medicare program may well be correct. Prior to September 1992, only the patient received an Explanation of Medical Benefits (EOMB) which listed the charges approved for services. The EOMB did not state and, in all likelihood most Medicare recipients did not know, that the amount which they were required to pay was limited by New York and Federal law. The hospital, on the other hand, undoubtedly was aware of the charge limit laws but, during the period when it did not receive a copy of the EOMB, was not informed of the approved charge and/or whether a modifier had been approved for Code 22 services. (See, Medicare Bulletin 92-16 [Sept. 1992 change].)
*447 However, whether excessive fees for physicians’ services were collected by Memorial because of inadequacies in the administration of the Medicare program or due to wrongdoing on its part is not relevant to the determination of the issues before the court. Although in the hearings mandated by section 19 before the imposition of sanctions, malfeasance may be the determinant in considering the amount of the fine, the refund requirement of section 19 is not conditioned on fault. No hearing is necessary to ascertain any amounts to be refunded — a comparison of the hospital’s records of bills paid by Medicare recipients with Medicare’s records of approved amounts will suffice. And the Medicare administrators’ failure to timely notify Memorial of the approval or rejection of its fee requests has not prejudiced the hospital, because as a nonparticipant, it has no right to challenge the agency’s fee determinations.
Memorial argues that this court should accept the Medicare administrative agency’s interpretation of the statute prior to September 1992 that excessive charges held not to be refunded and patients were liable to pay charges in excess of the legal limits. For it was not until September 1992 that the Federal agency responsible for Medicare, the Health Care Financing Administration (HCFA), established a Comprehensive Limiting Charge Compliance Program which required that nonparticipating providers of physicians’ services be notified of approved fees, and explicitly directed that payments in excess of legal limitations be refunded or credited to an outstanding balance. That program also provided for agency verification of refunds on a selective basis. (Medicare Bulletin 92-16.)
However, the interpretations of statutes by administering agencies are not entitled to deference "when, as here, the issue is one of pure statutory construction.” (Debevois & Plimpton v New York State Dept. of Taxation & Fin., 80 NY2d 657, 664.) "Where * * * the question is one of pure statutory reading and analysis, dependent on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight. And, of course, if the regulation runs counter to the clear wording of a statutory provision, it should not be accorded any weight.” (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980].)
Public Health Law § 19 explicitly directs that over *448 charges be refunded. Accordingly, a contrary directive by an administrator is not to be accorded any weight.
And were the court to consider the agency’s interpretation of the Federal statute, it is its present position which is significant. For HCFA has promulgated a program by which it has totally reversed the administrators’ prior position although the Federal statute has not been amended. Apparently, the agency has accepted the criticism of legislators that it failed to implement the law. (See, supra, n 2.)
The present position of the Medicare administrators — that fees in excess of those permitted by the Federal and State limiting charge laws must be refunded — is the correct interpretation of the statutes. Accordingly, if such refunds have not been made, the persons entitled to them may bring an action for them just as persons ordinarily may sue for money to which they are entitled.
Memorial’s second argument in support of its motion is that, although it has voluntarily complied with the limiting charge laws, those laws do not apply to it because it is a hospital, not a physician. However, construing those laws to apply only to the charges of physicians who bill individually would defeat their purpose. More and more, the services of physicians are furnished by providers of various kinds — medical corporations, HMOs and hospitals. If the services of physicians employed by hospitals were not within the purview of Public Health Law § 19, that law would have little effect. The statute excepts treatment in doctors’ offices and patients’ homes, leaving its restrictions to apply only to physicians’ services rendered in hospitals, clinics, and other institutions. To distinguish between services rendered in such institutions by physicians who bill directly and by employed physicians makes little sense.[3] Apparently HCFA did not make such a distinction but considered hospitals which furnish physicians’ services to be subject to the limiting charge laws. (See, 42 CFR 414.48; 56 Fed Reg 59502 [1991].)
This will not be the first case in which a hospital has been held to be in the shoes of physicians under the law. In Albany Med. Coll. v McShane (104 AD2d 119, 121 [3d Dept 1984], affd 66 NY2d 982 [1985]) hospitals were held to be entitled to practice medicine. The statutory prohibition against the practice of medicine by any person not a registered physician was *449 considered inapplicable to hospitals. Memorial is allowed to practice medicine by its employee physicians and it is bound by the charge limits applicable to them.
For the above-stated reasons, the motion to dismiss is denied.

. The Medicare Act is composed of two separate benefit programs. Part A provides coverage for hospital care (42 USC § 1395 [c]-[i]) and is not the subject of this action.

. The sponsors of the Medicare Beneficiary Act of 1992, which did not pass, apparently did not share defendant’s position that the present Federal law does not require refunds of overcharges. They consistently spoke of that Act’s purpose as "clarification”, not change, and of the failure of the Health Care Financing Administration to implement the law. (138 Cong Rec S6493 [May 12,1992].)

. Apparently, some physicians independently bill for services rendered at Memorial.