*96 OPINION OF THE COURT
Acosta, J.
The primary issue before the Court is whether the City of New York’s decision to not apply an increased-take-home-pay (ITHP) benefit to police officers and firefighters placed into tier 3 of the retirement system after July 1, 2009, and to continue deducting 3% of their wages towards their retirement benefits, violates Retirement and Social Security Law § 440 (b). We hold that it does. We also hold that plaintiffs sufficiently stated a cause of action for common-law conversion of the deducted wages.
All city and state employees, including New York City police officers, hired before July 1, 1973, were placed into a retirement system referred to as “tier 1.” As a general matter, public employees hired between July 1, 1973 and July 1, 1976 were placed into tier 2 (see generally Retirement and Social Security Law, art 11, §§ 440-451). Most public employees hired between 1976 and 1983 were placed into tier 3 (see Retirement and Social Security Law, art 14, §§ 500-520). Tier 2 retirement benefits have a pension component and an annuity component (see Retirement and Social Security Law § 441 [b], [c]). Tier 3 has a pension benefit, but no annuity component (see Retirement and Social Security Law §§ 504, 505).*
While most public employees hired after 1976 were placed, successively, into tiers 3 and 4, until July 1, 2009, the legislature repeatedly extended tier 2 for police officers. The City has placed police officers hired after July 1, 2009 into tier 3, rather than tier 2.
Tier 2 police officers make individual pension contributions ranging from 4.3% to 8.65% of their pay, depending on their age at the time they were hired. By contrast, police officers in tier 3 make individual pension contributions at a fixed rate of 3% of their pay.
In 1963, as a result of contract negotiations with police unions, the City implemented “Pensions-for-increased-take-home-pay” (ITHP) (see Administrative Code of City of NY § 13-226). ITHP increased officers’ take-home pay by having the City contribute a portion of each officer’s required pension con *97 tributions. From 1963 to 1966, the City contributed 2.5% towards all police officers’ pensions. In 1967, the legislature increased the City’s ITHP contribution rate to 5%, where it remained until 1975 (see Administrative Code § 13-226 [a] [5], [6]).
In 1974, the legislature shifted the ITHP codification from the New York City Administrative Code to the Retirement and Social Security Law (see Retirement and Social Security Law § 480 [a]). During the fiscal crisis of 1976, the legislature reduced the City’s ITHP contribution rate from 5% to 2.5% (see Retirement and Social Security Law § 480 [b] [i]). In June 2000, the City and the Municipal Labor Committee entered into an agreement entitled “Agreement on Jointly Supported Pension Enhancements” (MLC agreement). The parties to the MLC agreement agreed to support implementation of certain actuarial methods that would generate savings for the City. In exchange, the City agreed to support specifically identified pending legislation that would increase the ITHP contribution rate from 2.5% to 5%. The legislature subsequently enacted Retirement and Social Security Law § 480 (b) (ii), increasing the City’s ITHP contribution rate to 5%.
As noted, through repeated legislative action, police officers continued to enjoy tier 2 status decades after it expired for most other state and city workers. The last two-year extension expired on June 30, 2009 (L 2007, ch 63, § 1). In June 2009, the legislature passed a bill that would have extended police officers’ tier 2 status for another two years, but the Governor vetoed it. In his message to the Senate, the Governor explained that, although the tier 2 status had been “routinely” extended for police officers and firefighters since 1976, the State and localities were now “hemorrhaging revenue at an alarming rate due to the recession and financial crisis” and that he was not willing to “simply re-enact the same provisions that have contributed to New York’s financial straits, without accompanying reform” (Governor’s Veto Message, Veto Jacket, Veto 5 of 2009 at 5).
By complaint dated July 6, 2010, plaintiff Patrick Lynch, as president of the Patrolman’s Benevolent Association of the City of New York, Inc., commenced this action (1) seeking a declaration that the City’s actions in declining to make an ITHP contribution for police officers hired after July 1, 2009 (i.e. tier 3 members) violated Retirement and Social Security Law § 480 (b); (2) seeking a declaration that the City violated Administrative Code § 13-216 (b) by taking the above actions without the *98 required seven-twelfths vote of the Police Pension Fund’s Board of Trustees; (3) alleging that the City breached the MLC agreement; (4) alleging that the City violated Labor Law § 193, which proscribes certain unauthorized deductions from employee wages; and (5) alleging that the City converted the affected police officers’ wages.
On or about December 3, 2010, plaintiff Roy Richter, as president of the Captains Endowment Association of the City of New York, Inc., intervened and served a substantially identical complaint, asserting four identical causes of action. By so-ordered stipulation entered September 8, 2011, Alexander Hagan, as president of the Uniformed Fire Officers Association, was permitted to intervene in the action and be added to the caption of Richter’s complaint as a party plaintiff.
The City moved to dismiss the complaints pursuant to CPLR 3211 (a) (7), arguing that tiers 1 and 2 were the only retirement plans that by their own terms called for ITHP contributions, and that Retirement and Social Security Law § 480 merely continued what was intended to be a temporary ITHP benefit for tier 1 and 2 members. The City argued that, since tier 3 “does not contain any provisions regarding ITHP or its calculation and administration, it would be absurd to assume that the Legislature intended that Tier III Police Members would be entitled to ITHP” The City further argued that, since tier 3 members contribute a fixed 3% of their wages towards their pension, application of the 5% ITHP contribution requirement to tier 3 members would lead to the “absurd result” of “entirely eliminat[ing]” tier 3 members’ responsibility to contribute towards their pensions. The City also contended that the MLC agreement
“merely sets forth an agreement between the City and the unions to support the legislative bill that would modify RSSL § 480 (b) . . . and does not include any provision whereby the parties agreed to extend ITHP contributions to Police Members and firefighters not covered by RSSL § 480 (b), such as those placed in Tier III.”
By notices dated April 1, 2011, Lynch and Richter moved for summary judgment. Supreme Court granted plaintiffs partial summary judgment on their first cause of action (declaring that the City violated Retirement and Social Security Law § 480 [b]), and granted the City’s motion to the extent of dismissing the second, third and fifth causes of action. We modify to deny the *99 City’s motion as to the fifth cause of action for common-law conversion.
ITHP was first implemented in 1963, as part of the New York City Administrative Code. The tier 1 pension plan then went into effect, and the tier 2 pension plan went into effect from 1973 to 1976; both had pension and annuity benefits. Tier 1 and tier 2 members paid between 4.3% and 8.65% of their wages towards their annuities. ITHP increased officers’ take-home pay by having the City pay 2.5%, and then 5%, of the officers’ contribution towards their annuities (see Administrative Code §§ 13-225, 13-226).
Thereafter, in 1974, ITHP was recodified as Retirement and Social Security Law § 480. Unlike Administrative Code § 13-226, however, section 480 makes no reference to any “annuity contribution” (Administrative Code § 13-226 [a] [1]). Instead, it provides, in pertinent part:
“Any program under which an employer in a public retirement system funded by the state or one of its political subdivisions assumes all or part of the contribution which would otherwise be made by its employees toward retirement, which expires or terminates during nineteen hundred seventy-four, is hereby extended, notwithstanding the provisions of any other general, special or local law” (Retirement and Social Security Law § 480 [b] [i]).
By its own language, section 480 is not restricted to tier 1 or 2, or to annuity contributions. Rather, it applies to “[a]ny program” under which a government employer makes a “contribution which would otherwise be made by its employees toward retirement” (emphasis added). Contrary to the dissent’s position, the plain language indicates a legislative policy to apply ITHP to any government employee, regardless of pension tier (see Eaton v New York City Conciliation & Appeals Bd., 56 NY2d 340, 345 [1982] [“where the statutory language is clear and unambiguous, the court should construe the statute to give effect to the plain meaning of the words used”]; see also Cromwell v Le Sannom Bldg. Corp., 177 AD2d 372, 372 [1st Dept 1991] [“The precise and unambiguous language of the statute may not be expanded through consideration of legislative history”]), and we disagree with the dissent that it is irrelevant that the statute itself does not limit its reach to annuity contributions. Moreover, the conclusion that the section 480 recodification was intended to extend ITHP to any current pen *100 sion tier is buttressed by the fact that, rather than being included in Retirement and Social Security Law article 11, governing tier 2, the statute was enacted as the sole occupant of its own freestanding article, article 13. The City’s argument that application of the 5% ITHP contribution rate to tier 3 members, who pay a fixed 3% of their salaries towards their pensions, would place tier 3 members “in a better position than members of Tiers One and Two and virtually every other member of a City retirement system” is unavailing. Such a situation is not unprecedented. As noted, ITHP contributions also result in some members of tiers 1 and 2 having to pay nothing towards their retirement. Moreover, tier 3’s provisions are generally less favorable for members than tiers 1 and 2. Hence, it is not unthinkable that the legislature might wish to soften the blow for tier 3 police officers by continuing to extend them the benefit of ITHP contributions. In any event, section 480 “must be read and given effect as it is written by the Legislature, not as the court may think it should or would have been written if the Legislature had envisaged all the problems and complications which might arise” (Parochial Bus Sys. v Board of Educ. of City of N.Y., 60 NY2d 539, 548-549 [1983] [internal quotation marks omitted]). Again, the plain language of section 480 and its placement in its own freestanding article are indicative of a legislative intent that ITHP contributions continue to apply to police officers, regardless of their tier. Moreover, despite the grave financial situation facing the City, the legislature, in creating tier 3, modified many benefits available to public sector employees in that tier, but chose not to exclude or diminish ITHP For example, the Retirement and Social Security Law expressly mentions ITHP in section 508-a (a) death benefits. Contrary to the dissent’s position, the fact that the legislature expressly mentioned ITHP in tier 3 but did not state that ITHP was inapplicable to that tier shows that it never intended to exclude ITHP from tier 3, that it purposefully omitted any exclusion of ITHP in tier 3 (see Brady v Village of Malverne, 76 AD3d 691, 693 [2d Dept 2010], lv dismissed 16 NY3d 806 [2011] [where the General Municipal Law was enacted before the Volunteer Firefighters’ Benefit Law, and the Volunteer Firefighters’ Benefit Law explicitly stated that it was an exclusive remedy, the Court refused to read into the Volunteer Firefighters’ Benefit Law an exception for remedies available under the General Municipal Law, because the legislature was deemed to be aware of all previously enacted statutes, and would have included such a carve-out in the Volunteer Firefighters’ Benefit Law had it intended there to be one]).
*101 Finally, plaintiffs’ allegations stated a cause of action for common-law conversion. A conversion occurs when a party, “intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person’s right of possession” (Colavito v New York Organ Donor Network, Inc., 8 NY3d 43, 49-50 [2006]). “Two key elements of conversion are (1) plaintiffs possessory right or interest in the property and (2) defendant’s dominion over the property or interference with it, in derogation of plaintiffs rights” (id. at 50 [citation omitted]). As a general matter, a cause of action for conversion may be dismissed as duplicative of a claim for breach of contract (see Melcher v Apollo Med. Fund Mgt. L.L.C., 25 AD3d 482, 483 [1st Dept 2006]). However, while plaintiffs’ claim for breach of contract was correctly dismissed, plaintiffs’ claim of a violation of Retirement and Social Security Law § 480 based on the City’s wrongful deduction of 3% of the officers’ wages is meritorious. Generally, “when the common law gives a remedy, and another remedy is provided by statute, the latter is cumulative, unless made exclusive by the statute” (Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 324 [1983] [internal quotation marks omitted]).
Accordingly, the order of the Supreme Court, New York County (Carol Robinson Edmead, J.), entered January 20, 2012, which, insofar as appealed from as limited by the briefs, granted plaintiffs/petitioners ’ motion for partial summary judgment declaring defendant/respondent City of New York to be in violation of Retirement and Social Security Law § 480 (b) (i) and (ii) by failing to contribute required amounts to the pensions of members of the New York City Police Pension Fund and the New York City Fire Department Pension Fund who are in tier 3 of the City’s pension system, and granted defendants’ motion to dismiss plaintiffs’ second, third, and fifth causes of action, should be modified, on the law, to deny defendants’ motion as to the fifth cause of action (conversion) as against the City, and grant plaintiffs motion for summary judgment on the issue of the City’s liability for conversion, and otherwise affirmed, without costs.

 Most public employees hired between 1983 and 2010 were placed into tier 4 (see Retirement and Social Security Law, art 15, §§ 600-617). Public employees hired between January 2010 and March 31, 2012, were placed into the short-lived tier 5 (see L 2009, ch 504, § 1), with public employees hired since April 1, 2012 being placed into tier 6 (see L 2012, ch 18).