Rosalee Margolis DRUYAN, Individually and as a Class Representative of Ticket Purchasers, Plaintiff,

v.

Mick JAGGER, The Rolling Stones, Ticketmaster, LLC, Live Nation, Borgata Hotel, Defendant.

No. 06 Civ. 13729(CM).

United States District Court, S.D. New York.

Aug. 29, 2007.

Martin Druyan, Martin and Druyan and Associates, New York City, for Plaintiff.

Andrew C. Devore, Cristina Marie Posa, Gregory A. Clarick, L. Peter Parcher, Manatt, Phelps & Phillips, LLP, New York City, for Defendant.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

McMAHON, District Judge.

Plaintiff Rosalee Margolis Druyan brings this action for breach of contract, fraud, prima facie tort, negligence, and breach of truth in advertising statutes against Defendants Mick Jagger, Ticketmaster L.L.C., and Live Nation Worldwide, Inc.[1] on her own behalf and on behalf of a putative class of 12,000 purchasers of tickets to an October 27, 2006 Rolling Stones concert in Atlantic City (the "Concert"). Unfortunately for the ticketholders. Mr. Jagger contracted a sore throat some time before the Concert, and The Stones declined to sing. The event was rescheduled for November 17, 2006.

The original Concert was due to take place at 8 p.m. on October 27. Ticketholders were notified of the change shorty after 4 p.m. on the day of the Concert. They were told that they could obtain a refund of the ticket purchase price or attend the rescheduled show on November 17th.

Plaintiff did neither. Instead, she filed this lawsuit, alleging that the defendants (1) intentionally withheld timely notice of the fact that the Concert was being rescheduled from her and the putative class of ticketholders, and (2) provided deliberately late email notice on October 27. after the class members had already incurred travel and hotel expenses. She claims that the class members have suffered $51 million in purported damages as a result, including expenses allegedly incurred for their hotel accommodations, travel, meals, and whatever alternative "entertainment" they were forced to procure in order to while away their hours in Atlantic City.

The defendants have filed a motion to dismiss for failure to state a claim under Rule 12(b)(6). For the reasons set forth below, the plaintiff's complaint is dismissed in its entirely and with prejudice.

### FACTS

Plaintiff alleges that in September 2006, she used a credit card to purchase two tickets to The Concert from the Ticketmaster Website, for a total price of approximately $575. (Am. Cplt. at ¶ 18). Plaintiff alleges that "defendants" offered but she declined a travel package to Atlantic City. (*Id.* at ¶ 19). Plaintiff further alleges that, in reliance on defendants' statements to the effect that the Concert would take place, their advertising of the Concert, and their good business reputation, she made hotel reservations for two nights at $347/night at an unspecified hotel, and traveled to Atlantic City on October 27, 2006 to attend the Concert.[2] (*Id.*

---

[1]. The plaintiff has not contested defendants' assertion that there is no legal entity by the name of "The Rolling Stones."

[2]. The Amended Complaint contains numerous typographical errors, including several references to plaintiff's traveling to attend the concert on October 29, 2006 or defendants'

at ¶ 25). (Plaintiff does not specifically allege that she made reservations at or stayed at the Borgata Hotel; rather, she alleges that the Borgata Hotel and Casino were the promoters of the Concert). (*Id.* at ¶ 16).

Before the plaintiff left for Atlantic City at approximately 2:30 p.m. on October 27, 2006, she checked her email. At that point, she had received no email notice that the concert was to be rescheduled. (*Id.*).

Plaintiff alleges upon information and belief (see *Id.* at ¶ 33) that, at some time prior to 4 p.m. on October 27, 2006, the defendants knew that Mr. Jagger had a sore throat. Indeed, she alleges upon information and belief that he had sought medical attention for the sore throat. (*Id.* at ¶ 34.) With respect to the Borgata Hotel only, plaintiff specifically alleges that "BHC [knew] of the October 27, 2006 concert cancelled [sic] at least 12 noon in the day of the scheduled concert." [3] (*Id.* at ¶ 17). Plaintiff further alleges, albeit on information and belief, that "sometime prior to 4 p.m. on Oct. 27, 2006 defendants were aware . . . that he would choose not to perform" at the Concert (*id.* at ¶ 33) and that all of the defendants "knew or should have known" prior to 4 p.m. that the Concert would not be held as scheduled. (*Id.* at ¶ 39). Plaintiff even alleges that defendants notified "the Hotels in AC" of the cancellation earlier than 4:12 p.m. on October 27, 2006, thus enabling the hotels to print apology signs that they could post to notify their clientele. (*Id.* at ¶ 45). But the defendants did not notify the plaintiff or the putative class members not to start their journeys to Atlantic City. (*Id.*)

Plaintiff assigns the following reason for the cancellation. Jagger and the Rolling Stones had booked two other concerts at the Beacon Theatre in New York City, one for October 29, 2006 and the other for October 31, 2006. (*Id.* at ¶ 28). The first was a political fundraising event, for which tickets had been sold al a cost of $60,000 per pair. Both of the Beacon Theatre concerts were to be taped by Martin Scorsese for an upcoming "theatrical movie." (*Id.* at 29) Plaintiff alleges that Jagger decided he would need to rest before the October 29, 2006 Beacon Theatre performance, which was purportedly more significant "financially and promotionally" to the defendants (all of them, including the hotel in Atlantic City). (*Id.* at ¶ 30). As a result. Jagger and the Stones elected not to perform al the Concert as scheduled. (*Id.* at ¶¶ 30, 33).

Despite their alleged knowledge that the Concert would not go forward as scheduled, plaintiff alleges that the defendants continued to advertise the Concert, sell tickets for the Concert, and otherwise represent that the Concert would take place on October 27. At approximately 4 p.m. on the day of the show, when plaintiff and other members of the putative class were either en route to Atlantic City or had already arrived and checked into their respective hotels, defendants finally notified the public that the concert had been cancelled. (*Id.* at ¶¶ 24, 31, 40). And the reason why the defendants did not give immediate notice of the cancellation, but instead waited until 4 p.m. on the day of the Concert? Simple—to lure plaintiff and her fellow ticketholders to Atlantic City. Plaintiff alleges that business was

sales of tickets to the concert up to and including October 29, 2006. It is the court's understanding that these events look place on October 27, 2006, the date of the scheduled Concert.

**3.** This allegation, like many of the others, contains several typographical errors including the apparently accidental substitution for the word "view" for the word "knew."

slow in Atlantic City in October of 2006, because it was cold and the weather was inclement. (*Id.* at ¶ 44). Defendants— who allegedly have business relationships with each another and with various hotels and casinos in Atlantic City decided to spur the local economy by purposefully withholding information about the Concert's cancellation until late on the day of the show. The late cancellation would prevent the putative class members from canceling their hotel reservations or avoiding meal and alternative entertainment-related expenses upon their arrival in Atlantic City. (*Id.* at ¶¶ 44, 49, 50, 51). These expenses were allegedly "a profit factor" for the defendants in scheduling the Concert, though the exact profits to each of the defendants are unknown. (*Id.* at ¶ 21; ¶ 49). Plaintiff generally alleges "That Defendant were obligated to be truthful in their advertisements and representations that the Oct. 27, 2006 Concert would occur." (*Id.* at ¶ 23), and further "That the defendants owed the Plaintiff and Class a duty of good faith and honesty and truthfulness in advertising and contracting with Plaintiff and the Class as to the Oct. 27, 2006 concert in Atlantic City." (*Id.* at ¶ 35).

Plaintiff recites throughout her complaint that she purchased her tickets "on the Internet from the defendants;" that she repeatedly viewed Ticketmaster's Internet ticket-sales site, (*id.* ¶¶ 18, 22, 25, 27, 42, 42); and that she explicitly "relied upon the material advertising and ticket statements of defendants." (*Id.* at ¶ 22). In a transparent attempt to be clever plaintiff (and her counsel) do not disclose in the complaint or attach to it any of the material that appeared in the "material advertising and ticket statements" on which she claims to have relied to her detriment. In their motion to dismiss. Defendants have filled in the gap. Those statements including Ticketmaster's

Terms of Use, which provide as follows: "By using or visiting the Site, you expressly agree to be bound by these Terms and follow these Terms, and all applicable laws and regulations governing the Site." (Terms of Use, DeVore Decl. ¶ 2, Ex. A). The Terms of Use themselves expressly notify all users (including the plaintiff) that events such as the Concert occasionally "are cancelled or postponed by the promoter, team, band or venue." (*Id.* at ¶ 9). The Terms of Use further provide that in the event of any such cancellation "Ticketmaster will not be liable for travel or any other expenses that [plaintiff] or anyone else incurs." (*Id.*) In addition, the Terms of Use include the following Limitation on Liability clause:

> IN NO EVENT WILL TICKETMASTER BE LIABLE TO YOU FOR ANY INDIRECT, CONSEQUENTIAL, EXEMPLARY, INCIDENTAL, SPECIAL OR PUNITIVE DAMAGES, OR FOR LOST PROFITS, REVENUES OR BUSINESS OPPORTUNITIES, EVEN IF TICKETMASTER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(*Id.* at ¶ 4).

Ticketmaster-issued tickets for the Rolling Stones concert (including the ticket issued to plaintiff) likewise provide on the back that "DATE & TIME ARE SUBJECT TO CHANGE." and that "IF THE EVENT IS CANCELLED OR RESCHEDULED, MANAGEMENT IS NOT REQUIRED TO ISSUE A REFUND." (Ticket. DeVore Decl. ¶ 3, Ex. B.) The decision to issue refunds or to make alternative tickets available is made at the management's discretion. (*Id.*)

While plaintiff did not attach any documents to her complaint, she submitted a declaration along with her opposition to the defendants' motion, to which she appended three documents: (1) a Ticketmas-

ter email alert, dated October 24, 2007, reminding the recipient that the Concert was "happening soon" (Druyan Deck. Ex. A); (2) a printout from a Ticketmaster website page, dated January 1, 2007, advertising Las Vegas "Shows and Entertainment" and providing an option to purchase a travel package to Las Vegas. (*Id.*, Ex. B); and (3) a copy of a Ticketmaster-issued ticket to a Celine Dion Concert (*Id.*, Ex. C). The relevance of the last two documents is not explained.

Plaintiff admits that defendants offered plaintiff and other ticketholders for the Concert the opportunity to obtain a refund for their tickets or to attend the rescheduled show on November 17, 2006. (Am. Cplt. at ¶¶ 43, 48).

Plaintiff declined both offers. Instead, she commenced the present action, alleging that all the named defendants breached some contract with her (Count I); committed fraud (Count II): committed a prima facie tort (Count III): committed negligence (Count IV): and violated truth in advertising statutes (Count V).[4] Plaintiff claims that, as a result of the defendants' rescheduling of the October 27 Concert, she and others incurred damages in the form of hotel, travel, meal and entertainment expenses in connection with the Concert itself (for a total of $24 million), another $24 million for expenses she and others *would* have incurred in connection with the rescheduled show if they chose to attend (which plaintiff did not), plus $3.6 million for the face value of the tickets for the cancelled Concert. (*Id.* at ¶ 43).

## DISCUSSION

### A. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief can be granted. The standard of review on a motion to dismiss is heavily weighted in favor of the plaintiff. "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true." *Frasier v. General Elec., Co.*, 930 F.2d 1004, 1007 (2d Cir.1991). The court is also required to read a complaint generously, drawing all reasonable inferences from its allegations in favor of the plaintiff. *California Motor Transp., Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, —— U.S. ——, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (internal quotation marks, citations, and alterations omitted). Indeed, a plaintiff must assert "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974, This "plausibility standard" is a flexible one, "oblig[ing] a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir.2007).

In deciding a motion to dismiss, this Court may consider the full text of documents that are quoted in the complaint *or documents that the plaintiff either possessed or knew about and relied*

---

4. Plaintiff's complaint lacks any consistent system for numbering the causes of action she asserts. The court has adopted one for clarity.

*upon in bringing the suit. Rothman v. Gregor,* 220 F.3d 81, 88–89 (2d Cir.2000); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.,* 75 F.3d 801, 808 (2d Cir.1996); *Wolff v. Rare Medium, Inc.,* 210 F.Supp.2d 490, 494 (S.D.N.Y.2000). Therefore, this court may consider a document not expressly incorporated by reference in a complaint without converting a 12(b) (6) motion into a motion for summary judgment where the document is "integral to the complaint." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002).

█ There are three such documents in this case. The first is the Ticketmaster-issued tickets themselves, without which plaintiff would have no claim to assert.[5] The second "document" is the content on the Ticketmaster internet-sales website. Plaintiff alleges that she repeatedly reviewed the information contained on the and that she relied on, *inter alia,* the "ticket statements" of the defendants. Ticketmaster's Terms of Use and the contents of the plaintiff's ticket are integral to the plaintiff's complaint, and she cannot make allegations about her reliance but postpone consideration of the merits of her claims by failing to attach them to, or incorporate them by reference in, the complaint. *See Philadelphia Parking Auth. v. Fed. Insur. Co.,* 385 F.Supp.2d 280, 285 (S.D.N.Y.2005). The third is the Ticketmaster email alert that the plaintiff submitted to the court, and that she also alleges she relied on to her detriment.

In the alternative, having submitted material outside of the complaint in response to defendants' moving papers, the plaintiff cannot complain that she lacked the requisite notice if the court treats defendants' motion as a motion for summary judgment. *See* 49 C.J.S. Judgments § 258 (June 2005) ("When a plaintiff introduces evidence beyond the pleadings, he or she is charged with knowledge that the defendant's motion to dismiss is thereby automatically converted to a motion for summary judgment, and formal notice is unnecessary.") The court does not believe it necessary to consider the additional documents proffered by the plaintiff and thereby to convert the motion from a motion to dismiss to a motion for summary judgment, but I could and would do so as an alternative ground for ruling.

## B. Breach of Contract (Count 1)

While plaintiff strenuously denies that any of her claims are predicated on the rescheduling of the Concert as opposed to defendants' alleged fraudulent scheme to delay the notice of that rescheduling she asserts a cause of action against all defendants sounding in contract in her complaint, and the court must begin by resolving that claim.

The plaintiff consistently lumps the defendants together in her arguments; yet there is no factual allegation in the complaint that would allow this court, or any trier of fact, to conclude that they are or ought to be treated as a single entity. Viewing each defendant separately, plaintiff fails to allege that she had any contract whatsoever with defendants Mick Jagger or Live Nation, or the Borgata I Intel.[6]

---

**5.** The court notes that, as part of her opposition papers, the plaintiff has submitted a Ticketmaster-issued ticket to a Celine Dion Concert. This terms of this ticket are identical, in all relevant respects, to the Rolling Stones ticket submitted by defendants.

**6.** If in fact, plaintiff's reservation was at the Borgata—and, as noted above, she does not specifically allege that it was then of course she had a contract with the Borgata, but the contract was for a hotel room, and plaintiff does not allege that she was unable to use the hotel room. Indeed, as I understand the

Therefore, she has stated no claim for breach of contract against any of them, and Count I must be dismissed as to them.

Turning, then, to Ticketmaster: plaintiff argues that she is not bound by Ticketmaster's Terms of Use because they were not "conspicuous." and that the "the issue of the terms of the 'contract,' if any ... must be resolved at trial." (Pl. Br. at 7). Plaintiff's frivolous arguments fail on both counts.

■ First, courts have consistently held that the use of a website for such purposes as purchasing a ticket manifests the user's assent to the Terms of Use, and that such terms constitute a binding contract as long as the terms are sufficiently conspicuous. *See Ticketmaster Corp. v. Tickets.Com, Inc.,* 2003 WL 21406289, at *2 (C.D.Cal. March 7, 2003) (notice on first page of Ticketmaster website stating that anyone who proceeds past that page to use the site accepts Ticketmaster's Terms of Use binds users to those forms); *see also Register.com v. Verio, Inc.,* 126 F.Supp.2d 238, 245 (S.D.N.Y.2000). To purchase her tickets from Ticketmaster, the plaintiff was required to click on a "Look for Tickets" button, immediately above which appears the statement "By clicking on the 'Look for Tickets' button or otherwise using this web site, you agree to the *Terms of Use.*" (See, e.g. Ex. A to Reply Decl. of Andrew C. DeVore, dated Jan. 26, 2007). Clicking on the *"Terms of Use"* link presents the full Terms of Use, including the "Purchase Policy" and a link directly to that policy, and the "Cancelled/Postponed Events" policy and a link directly to that policy. (See Ex. A to Decl. of Andrew C. DeVore, dated Jan. 5, 2007). Ticketmaster's Terms of Use are sufficiently conspicuous to be binding on the plaintiff as a

matter of law. Contrary to plaintiff's suggestion, the enforceability of the Terms of Use does not depend on her actually having read them. A plaintiff who avows "concert expertise" and familiarity with the ticket-sales business, and who alleges that she has been using the Ticketmaster website for approximately 5 years, can properly be charged with knowledge of the site's Terms of Use.

■ It is likewise well-established that the terms of the plaintiff's ticket constitute an enforceable contract. *Bickett v. Buffalo Bills, Inc.,* 122 Misc.2d 880, 472 N.Y.S.2d 245, 247 (N.Y.Sup.Ct.1983) (enforcing statement on football ticket providing that "admission may be refunded or terminated at any time"); *Barnett v. Madison Square Garden Center, Inc.,* 227 A.D.2d 178, 641 N.Y.S.2d 669 (1st Dept. 1996) (ruling that ticket to New York Rangers' game constituted a "valid written contract between the parties" that precluded any claim for recovery beyond a refund of the ticket purchase price).

■ The Terms of Use and the Concert ticket provided the plaintiff with unequivocal notice that any concert or event was subject to the risk of rescheduling. Neither of the contracts required defendants to notify ticketholders of such rescheduling within any specific period of time prior to the concert. The Ticketmaster Terms of Use merely provide that "Occasionally, events are canceled or postponed by the promoter, team, band or venue. Should this occur, we will attempt to contact you to inform you of refund or exchange procedures for that event." The Terms further provide as follows: "For exact instructions on any canceled or postponed event, please check the event information online or con-

---

complaint, plaintiff is upset that she was required to use the hotel room she had previously reserved, because poor weather pre-

vented her from returning home. (Am. Cplt. ¶ at 46).

tact us." (Terms of Use. DeVore Decl. ¶ 2, Ex A at 9). Neither of these statements supports any obligation on defendants' part to notify ticketholders of a concert's rescheduling at any particular point in time or at all.

■ Nor does plaintiff's amorphous allegation that "defendants" owed her a "duty of good faith and honesty and truthfulness" in contracting with the plaintiff help the plaintiff's ease. Even if the court construes this statement as an allegation that plaintiff's contract with Ticketmaster contains an implied duty of good faith and fair dealing, it is well-established that the implied covenant does not create any new contractual rights or provide an independent basis for recovery. *Village on Canon v. Bankers Trust Co.,* 920 F.Supp. 520, 534 (S.D.N.Y.1996). Under the terms of her contracts with Ticketmaster, plaintiff has no right at all to be notified by Ticketmaster in the event of a Concert's cancellation or rescheduling by individuals or entities other than Ticketmaster. The court cannot imply such a right into the plaintiff's contracts.

Plaintiff's allegation that "the e-mail activity and communications to plaintiffs" modified or amended her contract with Ticketmaster or constituted some "course of conduct" apart from the contract is frivolous. The simple fact is that plaintiff consented to receive daily email alerts about the Concert from Ticketmaster when she purchased her tickets. (Pl. Br. at 11). They were part and parcel of her contract, and nothing more.

■ Finally, plaintiff's recovery in the event of any rescheduling was contractually limited to precisely the relief that she was offered a refund of the ticket purchase price or an exchange. The Terms of Use explicitly preclude defendants' liability for consequential damages by providing that "Ticketmaster will not be liable for travel or any other expenses that [plaintiff] or anyone else incurs in connection with a cancelled or postponed event" and that Ticketmaster will not be liable for any "indirect, consequential, exemplary, incidental, special or punitive damages ..." under any circumstances. (*Id.* at 4, 9). The plaintiff has not alleged any "overriding public interest," that would prevent this court from enforcing the limitation. *Metropolitan Life v. Noble Lowndes Int'l, Inc.,* 192 A.D.2d 83, 600 N.Y.S.2d 212 (1st Dep't 1993)—and there is none. The New York State Legislature has decided what is in the public interest by passing a law— the Arts and Cultural Affairs Law to set standards for what must be offered to ticket purchasers in the event a concert is cancelled. Here, as in *Barnett,* there is nothing inherently unjust about limiting the plaintiff to the remedy provided by her contract with Ticketmaster—particularly since that remedy so closely tracks the New York state statute that would govern plaintiff's rights in the absence of a contract. McKinney's Arts and Cultural Affairs Law § 23.08(3): see *Barnett,* 227 A.D.2d at 178–79, 641 N.Y.S.2d 669 (affirming dismissal of claims that Madison Square Garden operator "choreographed" labor stoppage that caused cancellation of New York Ranger games and owed damages to season ticket holders beyond refund of ticket price because consistent with Arts and Cultural Affairs Law § 23.08(3), the ticket precluded "any relief beyond a pro rata refund.")

Therefore, plaintiff's claims for breach of contract are dismissed as against all defendants.

## C. Fraud (Count II)

The gravamen of the plaintiff's fraud claim appears to be that defendants defrauded her and the putative class members into coming to Atlantic City by con-

tinuing to "advertise on the internet and media that the concert would take place when they knew it would not" for some unspecified period of time prior to Ticketmaster's posting of an announcement of cancellation at 4:12 p.m. on October 27. (Am. Cplt. at ¶ 42; Pl. Br. at 13). Plaintiff fails to specify how long that period was with respect to an defendant other than the Borgata Hotel, which she alleges somehow knew of the rescheduling at 12 p.m. on the day of the Concert at the latest. (However, it stands to reason that Jagger and the Rolling Stones knew before anyone else that they were not going to perform.) Plaintiff argues that defendants perpetrated the fraud in order to reap the profits of the putative class members' stay in Atlantic City, and were therefore unjustly enriched at the ticketholders' expense.

The plaintiff's fraud claim is untenable for a number of reasons.

 First, plaintiff's fraud claim against Ticketmaster must be dismissed as duplicative of her breach of contract claim. It is axiomatic that a plaintiff cannot plead a fraud claim based on the same facts that underlie her breach of contract claim unless she (i) demonstrates a legal duty separate from the duty to perform under the contract; (ii) demonstrates a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seeks special damages that are caused by the misrepresentation and unrecoverable as contract damages. *Bezuszka v. L.A. Models, Inc.*, 2006 WL 770526 (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Serv., Inc.*, 98 F.3d 13, 20 (2d Cir.1996)). Plaintiff's purported fraud claim against Ticketmaster falls into none of these narrow exceptions.

Defendant Ticketmaster has no duty to the plaintiff "extraneous to, or distinct from" her contracts with them as set forth in the Terms of Use and her Concert ticket. See *Bridgestone*, 98 F.3d at 20 (no separate duty where defendant "did not occupy a position of trust or special confidence ... that imposed obligations beyond the express agreements.") Plaintiff's suggestion that Ticketmaster owes her any extracontractual duty based on the parties' purported "unique," "unprecedented," "confidential interactive computer relationship" is absurd on its face. There is nothing unique, unprecedented, or confidential about the typical buyer-seller transaction between the plaintiff and Ticketmaster, about e-mail notifications sent to thousands of ticket consumers, or about "Internet ads" visible to anyone who visits the Ticketmaster site. To the extent that plaintiff submitted credit card or personal address information on the Ticketmaster website, that confidential data is governed independently by Ticketmaster's Privacy Policy and has no bearing on the existence of any extracontractual duty to notify the plaintiff of concert scheduling changes in a manner she considers timely.

Plaintiff likewise cannot claim that the sole "misrepresentation" she alleges—that defendants continued to advertise that the "concert would take place" after they learned that it would in tact be cancelled (Am.Cplt.¶ 42) was collateral or extraneous to two separate contracts that provide explicitly for the possibility of rescheduling.

Finally, plaintiff cannot recover special damages from Ticketmaster based on That purported misrepresentation. *Bridgestone/Firestone, Inc.*, 98 F.3d at 20. The only damages that plaintiff can recover as a matter of law are not "special" damages: they are precisely the damages contemplated by her contract with Ticketmaster, and that contract explicitly precludes their recovery.

Plaintiff does not allege that Ticketmaster knew that the Concert would not go forward as scheduled at the time she purchased her tickets or made her hotel reservations, or that she was she was fraudulently induced to enter into the contract in the first place. She claims only that she relied on Ticketmaster's representations that the Concert would take place as scheduled when she left for Atlantic City on the afternoon of October 27. Yet that reliance was necessarily misplaced given Ticketmasters clear and consistent contractual warnings to the plaintiff that the Concert's timing was subject to change. Here, as in *Bridgestone/Firestone*, Ticketmasters allegedly knowing misrepresentations that the Concert would take place as scheduled did no more than lull the plaintiff into a "false sense of security." *Id.* at 19. Such allegations of intent or concealment, however, do not state a claim for fraud under New York law since they relate only to Ticketmaster's performance of its contractual obligations. *Vista Co. v. Columbia Pictures Industs., Inc.*, 725 F.Supp. 1286, 1294 (S.D.N.Y.1989).

Plaintiff relies on a single Texas case, *Union Pacific Resources Group, Inc. v. Rhone–Poulenc, Inc.*, 247 F.3d 574 (5th Cir.2001) for the proposition that Ticketmaster's "partial disclosure" relating to the date and time of the Concert obligated them to make a full disclosure of the Concert's rescheduling. In *Rhone–Poulenc, Inc.*, the Fifth Circuit held that an owner of one general partner in a limited partnership assumed an affirmative duty, under Texas law, to disclose all material facts about a proposed transfer of its ownership interest when it elected unilaterally to supply to other partners information about the proposed transaction beyond the minimum formal disclosures required by the parties' partnership agreement. 247 F.3d 574 (5th Cir.2001). The *Rhone–Poulenc* court emphasized that the defendant's dis-

closure of the entire proposed purchase agreement was beyond the scope of the parties' partnership agreement and that, indeed, the defendant had gone out of its way to make the plaintiff aware that it was supplying information beyond its contractual obligation voluntarily and "in the spirit of openness." *Id.* at 587. In so doing, the court held, the defendant assumed a duty to disclose all material facts about the proposed transaction. *Id.* In the present case, as explained above. Plaintiff admits that the e-mail advertisements and notifications alleged to constitute "partial disclosures" were simply among the daily emails plaintiff consented to receiving from Ticketmaster by purchasing the tickets. (Pl. Br. at 11). Once again, these advertisements and alerts gave rise to no extracontractual duty on the part of Ticketmaster to notify the plaintiff of the Concert's cancellation at that, or any other, particular point in time.

Next, plaintiff's claim against the remaining three defendants fails because she has not pled *justifiable* reliance on the alleged withholding of notice of the concert's cancellation.

■■■■ To state a cause of action against them for fraud based on concealment "the plaintiff must prove a misrepresentation or material omission of fact which was false and was known to be false by the defendant, made for the purpose of inducing the other to rely upon it, and the justifiable reliance of the other party on the misrepresentation or material omission and injury." *O'Brien v. Citizens Ins. Co. of America*, 16 Misc.3d 1120(A), 2007 WL 2284689, *9 (N.Y.Sup.Ct.2007). In view of the clear warning from Ticketmaster about the possibility of cancellation and the contractual remedies therefor, plaintiff could never show that her reliance on the remaining defendants' failure to make an

earlier announcement of the concert's cancellation was justifiable.

Finally, the plaintiff's fraud claims fail to satisfy the requirements of Rule 9(b). The complaint contains only conclusory allegations of defendants' fraudulent scheme to withhold timely notice of the Concert's rescheduling for their own profit or the profit of their purported (and unidentified) business associates in Atlantic City. Fed.R.Civ.P. 9(b) requires that "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Although scienter need not be alleged with great specificity, the plaintiff is still required to plead a factual basis that gives rise to a "strong inference" of fraudulent intent or provides "strong circumstantial evidence of conscious misbehavior." *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987), cert. denied, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988); *see Ouaknine v. MacFarlane*, 897 F.2d 75, 79–80 (2d Cir.1990); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1125 (2d Cir.1994).

Nothing in the complaint satisfies this requirement. With regard to defendants Jagger and the Stones, plaintiff alleges no fact that would suggest any profit to the fabled rock group resulting from the last-minute announcement of the cancellation.[7] The court is even more in the dark about Live Nation, since plaintiff does not allege anything at all about its role in connection with the Concert or what it did or did not do once Jagger purportedly decided to reschedule it. Plaintiff pleads no facts tending to show that she has any personal knowledge about the business that defendants allegedly do with each other and with other hotels and casinos in Atlantic City, so her speculation that this "business relationship resulted in the actions and fraud" she complains of, fail to satisfy the pleading requirements of rule 9(b). *Wexner v. First Manhattan Corp.*, 902 F.2d 169, 173 (2d Cir.1990) (affirming dismissal for failure to satisfy Rule 9(b) because purported fraud claim "cannot be based on allegations which are themselves speculative").

The Borgata, being a hotel, is the only defendant with an apparent financial motive to withhold notice of the concert's cancellation. Of course, plaintiff fails to allege that she had a reservation to stay at the Borgata, which dooms her individual claim. The complaint against Borgata is deficient in another respect, however, as it is devoid of any allegation that the Borgata Hotel made any representation—or misrepresentation—on which plaintiff allegedly relied. The only alleged misrepresentations and omissions that plaintiff points to in her complaint were on (or were not on) the Ticketmaster web site. Plaintiff alleges no particularized facts that would allow a trier of fact to impute any decision regarding what was or was not placed on Ticketmaster's web site to Borgata. Such alleged "facts" as Jagger's purported visit to a doctor at some unspecified point in time prior to cancellation of the concert, the poor weather in Atlantic City in October 2006, or the fact that two high profile Stones concerts were scheduled at the Beacon Theatre several days later, do not provide strong circumstantial evidence that Borgata and Ticketmaster conspired to keep word of the concert's cancellation

---

7. Remember, plaintiff does not allege that the cancellation of the Concert was a fraud—only the supposedly belated announcement of its cancellation. There is no factual basis to inter that Jagger or the Stones, who ostensibly cancelled so that Jagger would be in good voice two nights later at the fund raiser, benefited in any way from delaying the announcement until the ticketholders were en route to Atlantic City.

off the Ticketmaster web site. And since plaintiff does not allege that she ever did business with Borgata, there is no basis to infer that Borgata would have had any idea how to get a hold of plaintiff to advise her of the concert's cancellation at an earlier hour.

■ "Additionally, where multiple Defendants are alleged to have committed fraud, the Complaint must 'allege specifically the fraud perpetrated by each defendant.'" *Simon v. Castello,* 172 F.R.D. 103, 105 (S.D.N.Y.1997) (quoting *Natowitz v. Mehlman,* 542 F.Supp. 674, 676 (S.D.N.Y.1982)). Plaintiff fails to allege specifically what each defendant did in furtherance of the fraudulent scheme to delay announcing the cancellation of the Concert. She simply alleges that "defendants" did everything. This omission is significant, because it makes it nearly impossible for the court to discern which of the defendants (other than Ticketmaster) are responsible for making the alleged "misrepresentations."

The plaintiff similarly lumps the defendants together in alleging that the identities of "said 12,000 concert goers ('the Class') are known to Defendants through internet credit card mail orders, and alleged fan club memberships and promotions." (Am. Cplt. at ¶ 27). Once again, in the absence of more particularized allegations, this umbrella statement does not justify imputing knowledge that is logically held only by the seller of the tickets (Ticketmaster) to the remaining defendants. For instance, without any allegation that either the plaintiff or any other putative class member ever corresponded with the Borgata Hotel, the court cannot infer that Borgata even had the means to contact ticketholders prior to 4 p.m. on October 27 or at any time before they arrived at the hotel's reservation desk.

■ Finally, when a plaintiff makes allegations of fraud based "upon information and belief" as to "matters peculiarly within the opposing party's knowledge," she must accompany the allegations by a statement of the facts upon which the belief is founded. *Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir.1974). *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir.1972). Significantly, plaintiff pleads the defendants were aware of both Jagger's sore throat *and* the fact that he would choose not to perform at the Concert *upon information and belief,* without providing an iota of factual basis for her belief.

## D. Prima Facie Tort (Count III)

■ Plaintiff alleges a cause of action for prima facie tort in her complaint but does not elaborate on its factual predicate or make any mention of it in her argument. In any case, plaintiff cannot salvage her untenable breach of contract and fraud claims by dressing them in this new guise. Under New York law, a cause of action sounding in prima facie tort consists of four elements: (1) intentional infliction of harm: (2) causing special damages; (3) without excuse or justification: (4) by an act or series of acts that would otherwise be lawful. *Curiano v. Suozzi,* 63 N.Y.2d 113, 480 N.Y.S.2d 466, 469 N.E.2d 1324, 1327 (1984). The prima facie tort cause of action exists to provide redress for acts that, while otherwise lawful and not encompassed by a traditional tort, are done solely for an improper or evil motive. *Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 464 N.Y.S.2d 712, 451 N.E.2d 459 (1983).

■ Plaintiff consistently maintains throughout her argument that the gravamen of her complaint is a traditional tort, namely fraud. This court has unequivocal-

ly rejected the plaintiff's fraud claims on a number of grounds, including the absence of any extracontractual duties to the plaintiff on the part of defendant Ticketmaster, plaintiff's inability to show justifiable reliance on any of the other defendants' representations or omissions, and the glaring deficiencies in plaintiff's factual allegations that make it impossible for this court to understand, *inter alia,* what each defendant's role was in the purported fraud and which of the defendants plaintiff holds responsible for the alleged misrepresentations. The courts have warned that the "Prima facie tort should not become a 'catch-all' alternative for every cause of action that cannot stand on its legs." *Belsky v. Lowenthal,* 62 A.D.2d 319, 405 N.Y.S.2d 62, 65 (1st Dep't 1978). This is not a case where the plaintiff should be allowed to circumvent the well-established requirements of her fraud claims with a cursory allegation of a prima facie tort.

█ Moreover, even if the court were to consider plaintiff's prima facie tort claim separately from her unsuccessful claims of breach of contract and fraud, and to assume that her pleadings suffice to establish intentional acts without any excuse or justification on the part of all four defendants, plaintiff still cannot establish that she has suffered any "special damages." The plaintiff incurred lodging, travel, and entertainment-related expenses in connection with a Concert that did not take place as scheduled. She had been explicitly warned that the Concert may not take place as scheduled, and, as indicated above, she had no legitimate expectation that she would be apprised of any change in scheduling at any point in time leading up to the Concert, There is nothing special about the incidental travel, food, and lodging expenses plaintiff incurred: they were precisely the incidental damages contemplated and explicitly excluded by her con-

tract with Ticketmaster. Indeed, they were expenses she expected to incur from the outset. The fact that the Concert did not take place as scheduled did not, in and of itself, damage the plaintiff: nor did it transform the additional expenses she expected to incur in connection with the Concert into special damages. To the extent that plaintiff or any other members of the putative class incurred any entertainment-related expenses when they traveled to Atlantic City for the original Concert, or any expenses at all when they elected to return for the rescheduled Concert instead of obtaining a refund, these purported damages were not "caused" by the defendants but resulted instead from choices that plaintiff and any other ticketholders freely made.

### E. Negligence (Count IV)

Finally, plaintiff appears to allege a cause of action sounding in negligence in her complaint, although she devotes not a single word in her brief to it. (Am. Cplt. at ¶¶ 56–7). In any case, the court rejects the notion that any of the defendants owed the plaintiff a duty to notify her of the Concert's rescheduling in a manner she considers timely.

As explained above, defendant Ticketmaster owes the plaintiff no extracontractual duty to notify her of the Concert's rescheduling or otherwise. Nor is the court aware of any case imposing such a duty on defendants Mick Jagger. Live Nation, or the Borgata Hotel. Plaintiff has not alleged that she did business with anyone except Ticketmaster.

Moreover, the court sees no basis for imposing on these remaining defendants purported duties "to be truthful in their advertisements and representations" or "of good faith and honesty and truthfulness in advertising and contracting" since the complaint is utterly devoid of any allega-

tions that these defendants made any representations or advertisements whatsoever. Plaintiff has pleaded no fact that would tend to impute Ticketmaster's allegedly misleading representations or advertisements to any of the other defendants. Nor, as explained more fully above, has the plaintiff alleged that she had any contracts with any defendant other than Ticketmaster.

### D. False Advertising Claim (Count V)

In addition to damages for her breach of contract and fraud claims, plaintiff seeks a declaratory judgment that defendants cease and desist from "fraudulent practices in the sale of concert tickets," and "comply with all existing statutory consumer protection truth in advertising laws." (Am. Compl. at ¶ 55). This claim, too, fails.

▮ To state a claim for false advertising or deceptive business practices, a plaintiff must allege at an absolute minimum that the subject advertisement "is likely to mislead a reasonable consumer acting reasonably under the circumstances." *Andre Strishak & Assocs., P.C. v. HP*, 300 A.D.2d 608, 609, 752 N.Y.S.2d 400 (2d Dep't 2002). Given the multiple warnings from Ticketmaster that the Concert's "DATE & TIME ARE SUBJECT TO CHANGE," and those contracts' absolute silence about any minimum time frame for providing notice of such changes, a reasonable consumer could not have been misled by internet advertisements or daily email alerts into believing that the Concert was guaranteed to take place as scheduled. Moreover, all of those announcements came from Ticketmaster, and plaintiff has pleaded no fact that would tend to impute them to any of the other defendants.

### CONCLUSION

The plaintiff was offered—and rejected—all the relief she is entitled to as a matter of law. Neither she nor any of the class members she purports to represent can state any claim against these defendants. Defendants' motion to dismiss the complaint for failure to stale a claim is therefore granted, and the complaint is dismissed with prejudice.